V. A. OSBURN, *as Administrator, etc.,* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

No. 15,033　(90 Pac. 289.)

SYLLABUS BY THE COURT.

JUDGMENTS—*Special Findings—General Verdict.* It is error for a court to set aside a general verdict and enter judgment on the special findings, unless the special findings compel such action. Where it is possible to harmonize the special findings with the general verdict the latter is controlling.

Error from Butler district court; GRANVILLE P. AIKMAN, judge. Opinion filed May 11, 1907. Reversed.

*N. A. Yeager,* and *T. A. Kramer,* for plaintiff in error.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for defendant in error.

The opinion of the court was delivered by

GREENE, J.: F. O. Rucker, while attempting to cross the Atchison, Topeka & Santa Fe Railway Company's track at a public crossing in Butler county, between six and seven o'clock P. M., on December 17, 1904, was struck by a passenger-engine and killed. This action was brought by V. A. Osburn, as administrator of Rucker's estate, to recover damages for his death. The jury returned a general verdict in favor of the plaintiff for $8000, and also returned special findings. The plaintiff moved for judgment on the gen-

eral verdict and special findings, and the defendant moved for judgment on the special findings notwithstanding the general verdict. The court denied the plaintiff's motion, and allowed the defendant's motion, set aside the general verdict and entered judgment on the special findings for the defendant. The plaintiff prosecutes this proceeding in error.

Neither party filed a motion for a new trial.

Many acts of negligence were charged in the petition, but the court withdrew all of them from the consideration of the jury except the following:

"That the defendant, its agents and employees carelessly and negligently used an engine drawing said train that was defective and out of repair and was leaking steam, and was supplied with a defective and poor and inefficient headlight.

"That the defendant failed to erect or maintain at said crossing an automatic or electric alarm-bell or any alarm, bell or other method of warning persons using said crossing of the approach of trains.",

A trial court has a very wide discretion in granting a new trial where the special findings are inconsistent with one another, or are evasive, or apparently unfair, or are inconsistent with the general verdict, but the same rule does not obtain where, notwithstanding a general verdict, the court is asked to enter judgment on the special findings. The final conclusion of a jury is expressed in their general verdict, and special findings are permitted only for the purpose of ascertaining whether the jury have considered and found the elemental ingredients which should inhere in and support their general verdict. In passing upon a motion for judgment upon special findings notwithstanding the general verdict the court is not required to reconcile inconsistent findings. It is not necessarily fatal to the general verdict that the special findings are inconsistent with one another. The question is, Are they, when considered as a whole, so inconsistent with the general verdict that they cannot be harmonized with it? Nor is it enough to warrant a judgment upon

the special findings that they may be susceptible of an interpretation which would overthrow the general verdict.   Before they will sustain a judgment they must be so inconsistent with the general verdict that they will not bear an interpretation which will harmonize with the general verdict.   (*Jackson v. Linnington,* 47 Kan. 396, 28 Pac. 173, 27 Am. St. Rep. 300; *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *MacElree v. Wolfersberger,* 59 Kan. 105, 52 Pac. 69; *A. T. & S. F. Rld. Co. v. Brown, Adm'r,* 33 Kan. 757, 7 Pac. 571; *St. L. & S. F. Rly. Co. v. Ritz,* 33 Kan. 404, 6 Pac. 533; *Bevens v. Smith,* 42 Kan. 250, 21 Pac. 1064; *U. P. Rly. Co. v. Fray,* 43 Kan. 750, 23 Pac. 1039; *Anderson v. Pierce,* 62 Kan. 756, 64 Pac. 633; *Drinkwater v. Sauble,* 46 Kan. 170, 20 Pac. 433.)

The special findings upon which the court entered judgment for the defendant are the ninth, tenth, eleventh, twelfth, fourteenth, sixteenth and seventeenth. The ninth finding was to the effect that the plaintiff as he approached the crossing could possibly have seen the approaching train for a distance of 600 feet, if clear of the stock-yards.   This finding furnishes no information on the question; the stock-yards were there, and obstructed his view.   Findings Nos. 10, 11, 12, 16 and 17 may be considered together.   They are that "before" and "immediately before" driving upon the crossing, if the deceased had stopped, looked and listened he could have seen the approaching train at a distance of from 500 to 700 feet, and could possibly have heard it when 300 feet away.   The actual distance the deceased was from the track at this time is unknown.   The jury expressed it as "before" and "immediately before" driving upon the track.   He may have been so nearly entering upon the crossing as to have been unable to protect himself, and, in view of the general verdict, this appears to have been the conclusion at which the jury arrived.

On the motion for judgment on the special findings, when the jury in answer to questions as to the distance

the deceased could have seen or heard the train when he entered on the crossing give minimum and maximum distances, the court should accept the minimum or the maximum distance as the one or the other harmonizes most with the general verdict. It appears that the train which struck the deceased was running at about forty-five miles per hour, or about sixty-six feet per second. The minimum distance which the deceased could have seen or heard the approaching train immediately before he passed upon the track, according to these special findings, was 300 feet. At the rate the train was traveling it would require $4^{6}/_{11}$ seconds to run this distance. The logic of the general verdict is that while the deceased could have seen or heard the train 300 feet away, immediately before entering on the track, he was then in such a position that he could not escape injury.

The fourteenth finding is as follows:

"Ques. If the deceased had looked up the track thirty-four feet before reaching the track upon which he was struck, how far up said track could he have seen the train as it appeared? Ans. Four hundred to seven hundred feet."

This was evidently construed by the trial court to mean that the train was within full view of the deceased when he was within thirty-four feet of the track. This is not the proper interpretation to be placed upon it, especially in the face of the general verdict. There is no finding that the train was within 400 feet of the crossing when the deceased was thirty-four feet away. The most that can be said of it is that if the train had been within 400 feet of the crossing when the deceased was thirty-four feet away he could have seen it had he looked. The deceased was riding in a buggy drawn by two horses. When he was thirty-four feet from the track the heads of the horses were about twenty feet from the track. It was dark, the train was running fast, and the engine was leaking steam, which to some extent obscured the head-

light. The jury may have found that these conditions deceived the deceased as to the distance the train was from the crossing when he entered upon it and the time it would take it to reach the crossing. In passing upon a request for judgment upon special findings against the general verdict all these conditions are resolved in favor of the general verdict. Whether the jury adopted this or some other view, there is nothing in the special findings that compels the conclusion that the special findings and general verdict cannot stand, and where such is the case it is error for the court to set aside the general verdict and enter judgment on the special findings.

The judgment of the trial court is reversed and the cause remanded, with instructions to set aside the judgment and enter judgment for the plaintiff on the general verdict.