J. E. LEWELLEN, *Appellee*, v. THE KANSAS NATURAL GAS COMPANY, *Appellant*.

No. 17,125.

SYLLABUS BY THE COURT.

1. JUDGMENTS—*Special Findings Inconsistent with General Verdict—Judgment Non Obstante.*    Answers to special questions are not a sufficient basis for a judgment *non obstante* unless they are clearly inconsistent with the general verdict.

2. —————— *Same.*    In order to separate water and other foreign substances from natural gas flowing through its pipe, a company maintained a drip pipe, in connection with which was a valve, and also a perpendicular pipe about two feet high into which gas from the conveying pipe could be released by a valve turned by a wrench.    A boy nine years old, playing with the appliance—the wrench having been left on the core of the valve—turned the valve, and the force of the released gas

instantly killed him. The father, who recovered damages for the death, was found to have known that escaping gas was dangerous to persons inhaling the same and to have known the use of the pipes and appliances. *Held,* that such findings are not sufficiently inconsistent with the general verdict to warrant a judgment *non obstante.*

Appeal from Montgomery district court. Opinion filed June 10, 1911. Affirmed.

*Eugene Mackey,* and *John J. Jones,* for the appellant.
*P. C. Young,* for the appellee.

The opinion of the court was delivered by

WEST, J.:  J. E. Lewellen sued the Kansas Natural Gas Company to recover damages for the death of his nine-year-old son, Oval, who was alleged to have been instantly killed by the force of natural gas suddenly released from a certain drip pipe left exposed by the company. The jury returned a verdict in favor of the plaintiff for $1087, and answered a number of questions on which answers the gas company moved for judgment notwithstanding the verdict. The motion was denied and the company appeals, assigning this ruling as the sole error. The company had an oil-and-gas mining lease upon certain farming land on which a gas well was located and a pipe through which large quantities of natural gas flowed at high pressure. In order to separate water and other foreign substances from the natural gas the company had on the land a drip pipe, with which was connected a valve and a perpendicular pipe about two feet in height. By turning the valve the natural gas would be released through the perpendicular pipe, and a wrench used for this purpose was left upon the core of the valve. Sometime before the injury Lewellen leased the land in question for agricultural purposes, the drip pipe being about 900 feet from the dwelling house and about a quarter of a mile from any road or highway leading

from the house but within two or three feet of the nearest path frequently traveled by the boy, Oval. It appears that on the 27th day of February, 1909, the boy began to play with the wrench and thereby turned on the gas, which came through the vertical pipe with such force that it instantly killed him. There is no claim that he was asphyxiated, but the fact appears to be that he was killed by the mere force of the escaping gas.

The court gave very full instructions, including the following:

"It is contended by the defendant company that the plaintiff was guilty of contributory negligence on his part; and in this connection you are instructed that it is also the duty of the plaintiff to exercise ordinary care to protect himself and family from any and all dangerous agencies upon the farm which were known to him, or which in the exercise of ordinary care could have been known by him. If he knew, or in the exercise of ordinary care could have known, that the arrangement of blowpipe and wrench as maintained upon the land by the defendant company was dangerous, it was his duty to caution his family, especially his children, against the danger, and to do that which an ordinary, prudent person would do under the same or similar circumstances to protect them from danger, and a failure to exercise such care would be contributory negligence on his part that would preclude a recovery in this case. The plaintiff's duty, like that of the defendant, was to exercise ordinary care, and this is always to be measured by the danger to be apprehended, and is therefore controlled by the surrounding circumstances."

Among the answers to special questions returned by the jury were the following:

"(19) Ques. Was the gas well on the premises in question, including the valve and wrench, in the same condition that other persons or companies in like business left wells and drip pipes of like character? Ans. No.

"(22) Q. Did the plaintiff at the time of the injury know or by the exercise of ordinary care could

he have known the use of these pipes and appliances at and near the gas well on the premises in question? A. Yes.

"(24) Q. Did the plaintiff at any time warn or instruct his son, Oval Lewellen, not to go upon the premises where the gas well in question was located? A. No.

"(27) Q. Did the plaintiff know at the time of the injuries complained of, that escaping gas was dangerous to persons inhaling the same? A. Yes.

"(32) Q. Did the plaintiff know that his son, Oval Lewellen, had been in the habit of playing in and about the gas well in question? A. No.

"(34) Q. Was the defendant company or any of its officers or agents guilty of any act of negligence, which was the proximate cause of the injury to the deceased, Oval Lewellen? A. Yes.

"(35) Q. If you answer question No. 34 'Yes' or in the affirmative, then state fully of what such negligence consisted? A. Leaving wrench on valve."

It is contended by the gas company that these questions show contributory negligence on the part of the plaintiff because he is thereby shown to have known of the injurious and dangerous qualities of the gas and the use of the pipes and appliances and did not instruct or warn his son against going near the well or upon the land necessarily used and occupied by the gas company in the exercise of its rights under its lease, but permitted his son to go thereon, where, as a result of the latter's own act, the injury occurred.

It will be observed that the attention of the jury was by the instructions called to the question whether or not the plaintiff knew or should have known that the arrangement of the pipe and wrench was dangerous, but the question submitted to the jury was whether or not he knew or should have known the use of the pipes and appliances at and near the gas well on the premises, and whether or not he knew that escaping gas was dangerous to persons inhaling the same. All that can be accurately determined from the answers to the special questions is that the plaintiff knew or might have

known the use of the pipes and appliances and that it was dangerous. to inhale escaping gas. The findings. do not show that the father had knowledge of his son's proneness to play about the drip pipe in question or that he had any knowledge whatever of the pressure. or that upon turning the valve by means of the wrench left thereon the force would be sufficient to cause instant death. The question of inhaling gas is not. in the case, and while the knowledge of the use of the pipes and appliances might be said to mean a knowledge of the purposes for which they were placed upon the land and a knowledge of the manner in which they were used, it does not imply a knowledge of the amount of pressure, or of the danger incident to turning the valve. The general verdict of necessity means that. upon the whole case the jury believed the plaintiff entitled to recover, and unless the special findings are absolutely irreconcilable with the verdict or in direct. conflict therewith it must stand.

The general verdict must stand unless the findings compel contrary action. (*Osburn v. Railway Co.,* 75 Kan. 746.)

"Where a question of inconsistency arises between findings made in answer to special questions and a. general verdict nothing will be presumed in aid of special findings while every reasonable presumption will be indulged in favor of the general verdict." (*Morrow v. Bonebrake,* 84 Kan. 724, syl. ¶ 3.)

The judgment is affirmed.