CHARLES R. BAKER, a Minor, etc., *Appellee*, v. THE UNITED IRON WORKS COMPANY, *Appellant*.

No. 18,370.

SYLLABUS BY THE COURT.

NEGLIGENCE — *Defective Appliances* — *Personal Injuries* — *Assumption of Risk*—*Duty of Master to Inspect Appliances.* A laborer in a foundry was required to assist in carrying a crucible of molten brass weighing 275 pounds by means of a brail holding the crucible by a ring around it from which handles projected. The crucible was new and larger than those ordinarily used. Because of this fact none of the brails on hand was large enough, and the foreman took one to the blacksmith shop in the foundry and gave orders to stretch it in a hurry, which was done by heating and hammering the ring. The hot metal was then carried to the mold by the reconstructed brail, and in pouring in into the mold the handle upon which the plaintiff was lifting broke at its connection with the ring, spilling the metal upon him. It is *held*: (1)

That the doctrine of assumption of risk has no application to the facts of this case; (2) That the employer who manufactures or alters an appliance is chargeable with knowledge of any defects which ordinary care in the process would have disclosed. Beyond this, if an appliance as ordinarily used is liable, if defective, to injure the employee a duty of reasonable inspection is cast upon the employer and he is chargeable with notice of such defects as the inspection would have revealed. (3) This duty of inspection is a continuing one, and arises from the primary obligation to exercise ordinary diligence to provide safe instrumentalities. Whenever an inspection is fairly incidental to such diligence it must be made.

Appeal from Montgomery district court. Opinion filed July 5, 1913. Affirmed.

*W. E. Ziegler,* of Coffeyville, for the appellant.

*T. H. Stanford,* and *G. T. Stanford,* both of Independence, for the appellee.

The opinion of the court was delivered by

BENSON, J.: This is an appeal from a judgment awarding damages for personal injuries.

While the plaintiff was assisting in carrying a crucible containing molten brass from a furnace in the defendant's foundry a handle of the brail or shank by means of which the crucible was carried broke, whereby a part of the molten mass was spilled upon his leg and into his shoe, causing painful and serious injuries, for which damages are sought.

The brail is an iron ring with handles on opposite sides. When the metal is sufficiently heated the crucible is taken from the furnace and placed within the ring, which is then lifted until it binds about the crucible just below the center, where it is larger than at the bottom or top. Two men at each handle of the brail then carry it to the mold.

The crucible used at the time of the injury was a new one, larger than those ordinarily used at the foundry, and there was no brail in the establishment large

enough in circumference to carry it. The foreman selected a brail and took it to the blacksmith shop of the foundry and gave orders to stretch it in a hurry to the required size. It was so stretched by heating and hammering, and was then immediately placed upon the floor, and the crucible, containing about 275 pounds of metal, was then drawn from the furnace with tongs and placed within it. The plaintiff and another laborer were directed to take hold of the handle on the side in front (as it was then carried). This handle was a straight rod projecting from the ring of the brail. The foreman and another employee took hold of the other handle, which was T shaped, so made to facilitate turning the crucible to pour the metal. The crucible was then lifted by these carriers who proceeded with it about six feet to a mold, when, in raising it for pouring, the handle on which the plaintiff was lifting broke off at its connection with the ring, causing the metal to spill and flow upon him. The brail had been used without accident before this alteration, but only for carrying smaller crucibles with lighter loads.

Errors are assigned upon the denial of a motion for judgment on the findings and upon the refusal of a new trial. The findings relied upon in support of the motion were that the crucible and shank or brail were such as are ordinarily used in similar plants, and that the plaintiff knew the way and manner in which the metal was carried in the crucible and emptied into the molds at the defendant's foundry.

The findings referred to necessarily related to the carriage of metals previously, in other and smaller crucibles with brails adapted to the size of the crucibles. The injury was not caused by the way in which the work was done, but by the use of a defective instrument. It does not appear that a brail adapted to a smaller vessel had ever before been enlarged as this one was in order to carry a larger one. Therefore it is not true, as the defendant argues, that the instru-

ment was one in ordinary use. It was not the duty of the laborer when directed to take the handle and lift to stop and examine the tool. The fallacy of such a claim is shown in the opinion in *Railway Co. v. Quinlan,* 77 Kan. 126, 128, 93 Pac. 632. The principle is further illustrated in *Allison v. Stivers,* 81 Kan. 713, 106 Pac. 996; *Murphy v. Edgar,* 83 Kan. 627, 112 Pac. 109; *Griffin v. Brick Co.,* 84 Kan. 347, 114 Pac. 217; and *Steele v. Railway Co.,* 87 Kan. 431, 124 Pac. 169. The doctrine of assumption of risk has no room for application here.

Whether the brail was made at the foundry or purchased of a manufacturer does not appear, but it was altered by the defendant at its own shop, and the situation is analogous to a case where the employer is the manufacturer. It is said to be well settled that the employer who furnishes an instrumentality made by him to his employee is chargeable with such knowledge of defects as ordinary care in the manufacture would have disclosed. (3 Labatt's Master & Servant, 2d ed., § 1054.)

In *A. T. & S. F. Rld. Co. v. Carey,* 58 Kan. 815, post, p. 437, 49 Pac. 662, where it appeared that the machinery of an engine had broken causing injuries to the foreman, it was said in the opinion:

"The broken parts had been constructed in the company's own shops, by its own employees, and the defects in question must have been obvious to those engaged in the work. In such cases the master is, without doubt, liable for resulting injuries."

Where a carpenter was required to use a scaffold instead of a ladder which he had selected, it was said:

"He did not select or use the scaffold relying upon the care and prudence of the brick masons in building it. The master selected it and ordered it to be used, just as he might have purchased another ladder, brought it upon the scene and ordered the appellee to substitute it for the one he was using when the fore-

man appeared. In such a case the duty would rest upon the master to supply a ladder which was reasonably safe, and he would be bound to know whether it was reasonably safe before ordering an employee ignorant of its condition to climb upon it. The discharge of this duty would not depend upon who constructed the ladder. Whether made by a manufacturer of ladders, by an ordinary carpenter, or by brick masons or their helpers, the master's duty would be the same. So here. . . . It is immaterial that the scaffold was built by the brick masons, and immaterial that the master did not superintend its erection. He imposed it upon the appellee and was obliged to know whether it was reasonably fit for service." (*Allison v. Stivers*, 81 Kan. 713, 715, 716, 106 Pac. 996.)

For the purposes of this decision it is sufficient to say that the employer who manufactures or alters an appliance is chargeable with knowledge of any defects which ordinary care in the process would have disclosed. Beyond this, if an appliance as ordinarily used is liable, if defective, to injure the employee a duty of reasonable inspection is cast upon the employer and he is chargeable with notice of such defects as the inspection would have revealed.

"The rule as to the measure of the employer's duty is also stated by saying that if, by the use of ordinary care in testing the strength of machinery placed in the hands of an employee with which to labor, its weakness and dangerous character for the work to be done could have been ascertained, the employer will be chargeable with notice of any defect in the machinery, and liable for any injury resulting to such employee from such defect." (4 Thompson's Commentaries on the Law of Negligence, § 3769.)

This duty of inspection is a continuing one and arises from the primary obligation to exercise ordinary diligence to provide safe instrumentalities. Whenever an inspection is fairly incidental to such diligence it must be made. (*A. T. & S. F. Rld. Co. v. Holt*, 29 Kan. 149; *Mo. Pac. Rly. Co. v. Dwyer*, 36 Kan. 58, 12 Pac. 352.)

In *K. C. & P. Rld. Co. v. Ryan,* 52 Kan. 637, 35 Pac. 292, it appeared that a lifting jack had been sent to the company's shops for repairs. It afterwards broke, injuring an employee. The court said:

"Now, if in repairing the worn or broken cogs of the jack, it was, or ought to have been, the practice at the shops, before the jack was sent out again for use, to examine and inspect all parts, to ascertain if any other defects existed therein, and any reasonable examination or inspection at the shops would have disclosed the defective weld of the foot, then the company would be negligent in furnishing from its own shops a defective jack for use, even if the defect in the jack was not visible; or even if after such repairs a man of ordinary skill, prudence and diligence would not, by any usual and ordinary inspection, have discovered the defect before the jack broke." (p. 657.)

Ordinary care as here used means reasonable care in view of the exigencies of the services and the dangers to be apprehended. Greater care should be used with respect to an appliance for carrying molten metal by laborers than for the carriage of an equal weight of solid or cold substance. Precautions required by ordinary care in one case might not be necessary in the other. The true test is that of reasonable prudence in the particular service.

Applying these fundamental principles to the question here presented, the evidence is amply sufficient to support the verdict. An appliance intended for a smaller receptacle was hastily altered and forthwith, with no inspection except to look at it, was used to carry a molten mass likely to cause serious if not fatal injuries to the carriers if the appliance was insufficient for the purpose. Simple tests of its strength would have revealed its weakness. Even if more elaborate tests were necessary the incidental expense ought not to outweigh safety of life and limb.

No one testified to the precise cause of the separation of the handle from the ring with which it was connected. The ring was in evidence, showing a dent at

the point of former connection. It appears that the defendant, after the casualty, had put the handle upon another brail, and it was not produced at the trial. The cause of the break was a question for the jury, but it was not difficult to find. In its original condition the instrument had been used without accident for several years. The jury were warranted in finding that in the process of heating, stretching, and hammering the ring, the weld or connection, however made, had been weakened. Necessarily the ring of the brail was weakened by drawing out the iron to a smaller diameter. From this fact and the appearance of the part offered in evidence it was for the jury to determine the cause of the break.

A multitude of cases where the principles involved in this controversy have been applied are cited in the works of Thompson and Labatt, above referred to. Other cases are referred to in extended notes in 41 L. R. A. 70, and 28 L. R. A., n. s., 1215.

A Minnesota decision upon facts quite similar to those presented in this appeal is fairly illustrative of the principles involved here. A laborer engaged in bridge work was standing upon a plank on a scaffold above a river, turning a jackscrew. For this work he was furnished a crowbar which had been injured by heating in a fire and pouring water upon it. In attempting to turn the screw with this crowbar it broke, causing the laborer to fall backwards and upon the ice below, thereby injuring him. After referring to evidence tending to show that the effect of the heat and water would be to weaken the bar, the court said:

"It would seem to us quite probable, even from common knowledge applied to the facts, that such a result would follow, and the jury might be justified in the conclusion that the crowbar was defective after the fire, even if of good quality when furnished. This evidence, taken in connection with the effect of the application of the slight force shown to have been applied in attempting to move the screw by it when it broke,

might well furnish grounds to support the conclusion that a reasonable inspection would have discovered its condition." (*Miller v. Great Northern Ry. Co.,* 85 Minn. 272, 273, 88 N. W. 758.)

The judgment is affirmed.