No. 19,213.

WILL BROOKS, *Appellee,* v. THE KANSAS CHEMICAL MANUFACTURING COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Defective Tool—Loss of an Eye—Findings Sustained by the Evidence.* In an action by an employee against his employer for damages resulting from the loss of an eye, which was struck and penetrated by a sliver of steel, the jury found specially that the proximate cause of the injury was a defective tool furnished the employee for use in his work. The defendant suggested several other causes. All of them were fairly eliminated either by the proof or for lack of proof. Under the proof the cause assigned by the jury was natural, reasonable, and adequate. *Held,* the inference was legitimate and not the product of speculation or conjecture.

2. SAME—*Unskilled Employee—Employer Must Furnish Tools Reasonably Safe for Use.* The decision in the case of *Steele v. Railway Co.,* 87 Kan. 431, 124 Pac. 169, relating to the right of an unskilled employee to accept a simple mechanical tool, like a cold chisel or cold hammer, furnished him by an employer, as reasonably safe for use, unless defects were so patent they must have been observed and appreciated or unless defects were actually brought to the employee's cognizance, followed.

3. TRIAL—*No Prejudicial Error.* Various errors assigned considered and held to be without substance and without prejudice.

Appeal from Reno district court; FRANK F. PRIGG, judge. Opinion filed January 9, 1915. Affirmed.

*C. M. Williams,* of Hutchinson, *W. E. Campbell,* and *O. C. Mossman,* both of Kansas City, Mo., for the appellant.

*Frank L. Martin,* and *Van M. Martin,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The plaintiff sued the defendant for damages resulting from personal injuries suffered on account of the negligence of the defendant. The plaintiff recovered, and the defendant appeals.

The plaintiff was a helper in the defendant's manufacturing establishment. He was directed to assist in shortening a sheet-metal hood or covering for a conveyor. To do this it was necessary to cut some rivets. The hood lay on a wooden platform constructed of light material which did not afford room to do the work, which gave the plaintiff insufficient opportunity to protect himself from the hazards of the work, and which did not furnish a sufficiently solid foundation upon which to rest the hood while the rivets were being cut. It was suggested to the defendant's foreman that the hood be taken to the shop, where the work could have been done according to proper methods, but

the foreman said, "they were covered up in the shop," and that the work should be done on the platform. By direction of the foreman the plaintiff applied to the person in charge of the defendant's storeroom for a sledge and a cold hammer, received them, repaired to the platform, and together with an associate undertook to perform the service required. He had no experience in doing work of that kind. For a time the plaintiff's associate held the cold hammer while the plaintiff struck it with the sledge. They then changed tools, and the plaintiff held the cold hammer. While so engaged, upon a stroke of the sledge a sliver of steel penetrated the plaintiff's eye. The plaintiff's associate immediately examined the cold hammer and the sledge. The sledge was in fairly good condition, but the head of the cold hammer was battered and scaled and had "little edges over the edge of the head." Some time after the injury the sliver was extracted from the plaintiff's eye by the use of a magnet, and it was produced at the trial. Cold hammers are made of tempered steel, and there was evidence that the sliver taken from the plaintiff's eye was a fragment of tempered steel.

The court submitted to the jury charges of negligence respecting the safety of the place where the plaintiff was required to work, the safety of the tools given him, and the safety of the methods by which the plaintiff was directed to do the work. With the general verdict the jury returned the following special findings of fact:

"Q. No. 1. If you find the defendant was negligent, then in what respect was it negligent? A. No. 1. They were negligent in not furnishing proper instruments to inexperienced workmen.

"Q. No. 2. Was the platform on which plaintiff was working the cause of the injury to plaintiff? A. No. 2. Indirectly by not being the proper place to do this kind of work.

"Q. No. 3. Was the use of the cold cut hammer and the sledge hammer the cause of the injury to plaintiff?

A. No. 3. Yes, by the cold cut not being in proper condition.

"Q. No. 4. Was the use of the cold cut hammer and the sledge hammer proper tools to use in the work being done by the plaintiff? A. No. 4. Yes."

The defendant argues that the verdict was based on conjecture because the injury might have been produced by a glancing blow of the sledge which might scale a good cold hammer or sledge; the sliver which penetrated the plaintiff's eye might have come from the sledge or from the cutting edge of the cold hammer; and the sliver might have come from the material which the plaintiff was cutting. The argument rests upon conjecture, not the verdict. There was no evidence that the blow which occasioned the injury was a glancing blow. The head of the sledge was in fairly good condition, but the head of the cold hammer was in the very condition which would likely cause fragments of steel to fly when struck by the sledge. The cold hammer was examined at once by a person looking for the cause of the plaintiff's injury and nothing about the cutting edge of it attracted his attention sufficiently to cause him to speak of it. There was no evidence on which to rest an inference that a chip or sliver of metal came from a rivet or from the hood. The testimony was that if the cold hammer bounded out of the gash made in a rivet by strokes of the sledge the plaintiff always tried to put the hammer back in the same gash. If this were not done and the hammer were set in a new place it was supposable that a piece of metal might be chipped off, but there was no testimony that these were conditions of the blow which caused the injury. The result is that all causes of the injury except the one assigned in the findings of fact are eliminated either by the proof or for lack of proof, while under the proof the cause assigned in the findings is natural, reasonable, and adequate. Consequently it may legitimately be inferred that the cause assigned for the injury was the true one. Indeed the inference accords so fully with

the laws of logic, the methods of scientific inquiry, and the ordinary operations of the rational faculty that it is quite irresistible. (*Railroad Co. v. Perry*, 65 Kan. 792, 794, 70 Pac. 876.)

It is said that the tool was a simple, common tool, which the defendant was not bound to inspect, that the plaintiff must have been as fully aware of its condition as the defendant, and that he was bound to know that particles of steel are likely to fly when a tempered tool like the cold hammer is struck with great force by a heavy sledge. The court has had before it several cases of this general character, and the present one is governed by the decisions in the cases of *Steele v. Railway Co.*, 87 Kan. 431, 124 Pac. 169, and *Railway Co. v. Quinlan*, 77 Kan. 126, 93 Pac. 632. The opinion in the Steele case distinguishes the cases of *Railway Co. v. Weikal*, 73 Kan. 763, 84 Pac. 720, and *Gillaspie v. Ironworks Co.*, 76 Kan. 70, 90 Pac. 760, relied on by the defendant, and that function need not be performed again.

The subjects of the safety of the place where the plaintiff was obliged to work, the method which he was required to pursue in doing the work, and some others are given much attention in the defendant's brief. They are no longer of consequence because the verdict rests on the defective condition of the cold hammer. True, the jury, in answer to special question number four, stated that the platform indirectly contributed to plaintiff's injury. The finding responded to evidence tending to show that the place was not a proper one in which to do the work, that if the work had been done in a proper place the danger from chipped pieces of metal would have been minimized, and that the plaintiff might have been able to take a position which would have protected him from pieces of metal flying from any source. The jury, however, following closely the instruction relating to proximate cause, classified the place where the work was done with the indirect

antecedents of the injury and stated the proximate cause in findings number one and number three. This discrimination on the part of the jury was distinctly favorable to the defendant.

It is suggested, but not argued, that the court did not instruct the jury on the subjects of contributory negligence and assumption of risk. No instructions on those subjects were requested, and the absence of such instructions was not included among the grounds of the motion for a new trial. Therefore it will be assumed that the defendant rested upon its defense of unavoidable accident.

It is pointed out that in one place in the instructions the court said it would be the duty of the master to know whether or not the place was reasonably safe before ordering his servant to work there, and it is said an absolute duty was thus imposed upon the defendant instead of the qualified duty which the law contemplates. But the court immediately proceeded to say that the defendant was not an insurer, and was only bound to exercise reasonable and ordinary care to furnish the plaintiff a reasonably safe place in which to work.

There are other space-filling criticisms of the instructions which will not be noticed here.

The plaintiff was injured on October 29, 1912, and at that time was earning $1.76 a day. At the time of the trial, which occurred a year later, he was twenty-three years old. The piece of steel penetrated his left eye. The tissues healed over the foreign body and it was necessary to cut them in order to extract it. Afterwards the eye itself was removed. During this time the plaintiff's right eye was sympathetically inflamed, and the injured eye was removed in order to save it. The plaintiff testified that the sight of the right eye was not as good as it formerly was. While this evidence was somewhat meager, it was sufficient to authorize the court to submit to the jury the plaintiff's claim for damages for permanent injury to the

right eye. What, if anything, the jury allowed for this item of damages, can not be known; but inasmuch as the total recovery did not exceed what might have been allowed for loss of time, for expenses, for pain, and for loss of the injured eye, the defendant has no reason to complain.

The judgment of the district court is affirmed.