No. 20,284.

ABRAM TARIN, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MASTER AND SERVANT—*Duty of Master to Provide Safe Appliances*. In this state a railroad company is required to use ordinary care to provide for its track layers simple tools like sledge hammers free from defect.

2. VERDICT AND FINDINGS—*Negligence—Evidence—Findings—Inconsistency*. The testimony showed that the hammer which caused the plaintiff's injury was so battered and misshapen as necessarily to have required some considerable continued use to bring about such condition. There was evidence of repeated complaints and promises to furnish proper tools. *Held*, that the general verdict should not be set aside and judgment entered on the special findings because the jury in answer to a question as to how long the defect had existed replied, "No evidence as to how long face was defective."

3. SAME—*Duty of Court to Harmonize, if Possible*. Rule followed that the findings should not control the general verdict unless the inconsistency between the two compel such result.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed July 8, 1916. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Harlow Hurley,* all of Topeka, for the appellant.

*Dempster O. Potts,* of Wichita, for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff was a track layer and engaged in the work of fastening the rails together. Another workman was driving spikes. The plaintiff testified: "When he hit the blow with his hammer on the spike, the spike flew off and hit me. It hit me on the forehead on the left side." The allegation and proof were to the effect that the hammer was defective and the jury so found. It was alleged that the defendant and the spike driver "knew, or would, by the exercise of ordinary care, have known of the imperfect and dangerous character of said hammer so furnished to and used by said Pedro." The plaintiff testified that sometimes ten or twelve hammers were used at the camp and sometimes only three or four; that the greater part of them were in bad condition; that he knew of complaint being made to the foreman regarding the hammers; that all the other workmen made complaint to the foreman and his assistant foreman.

"The foreman promised us good tools and said that he was going to furnish us with good tools in a short time. Quite a while afterwards they brought us four new hammers. It was about 15 days before I received my injuries that they brought the new hammers. There was a further complaint made by [to] the foreman after the new hammers arrived. The foreman promised he would get some more new ones. . . . It was 15 days more or less after the four new hammers were furnished that I got injured. I examined the hammer that I have been describing the following day after I was hurt."

The witness had already described the hammer in question as being slanting.

"This is round, that is the mouth of the hammer. Those two pieces there that he just marked out was missing and the other part was remaining on the surface of the hammer."

In answer to a question as to how long the hammer had been defective the jury answered "no evidence as to how long face was defective."

Tarin v. Railway Co.

"Q. 5. State where the piece of material that struck plaintiff came from and what caused it to break off and fly toward the plaintiff. Answer. From spike. A heavy blow from defective hammer."

The defendant introduced no evidence except that of a witness who simply told of the injury.

A demurrer to the plaintiff's evidence was overruled. A motion was made for judgment on the special findings and also for a new trial, both of which were overruled. The defendant in its brief says:

"This case is appealed for the purpose of testing the correctness of the trial Judge's rulings upon the questions of law raised by the demurrer, and the two motions above referred to."

The argument is made that the hammer being a simple tool which could be understood as well by the workmen as by the company the duty to inspect and ascertain its condition was eliminated. The cases cited, however, are those in which the workman using the tool was injured. Here the tool used by the plaintiff was not complained of and the injury resulted from a defective tool used by a fellow workman. It is the rule in this state that the employer must use ordinary care to provide safe tools of this character for its workmen. (*Railway Co. v. Quinlan,* 77 Kan. 126, 93 Pac. 632; *Steele v. Railway Co.,* 87 Kan. 431, 124 Pac. 169; *Baker v. Iron Works Co.,* 90 Kan. 430, 133 Pac. 737; *Brooks v. Manufacturing Co.,* 94 Kan. 86, 145 Pac. 840; *Hovis v. Refining Co.,* 95 Kan. 505, 148 Pac. 626.)

It is forcibly insisted that the jury having found no evidence as to how long the face of the hammer was defective it must necessarily follow that negligence or, in other words, knowledge or means of knowledge on the part of the defendant was not shown so as to establish negligence. The duty to harmonize the findings with one another and with the general verdict leads to the observation that a finding of negligence in the use of defective tools and that the injury was from a heavy blow from a defective hammer indicate that the jury for some reason felt justified in awarding damages to the plaintiff and it must be presumed that they were instructed in accordance with the allegations of the petition that the defect was or should have been known, by reason of its continuance, to the defendant. Had this precise question been presented it is almost certain that the jury would have found that it had so continued as to

amount to knowledge or the means of knowledge. But being asked the question as to the length of time the defect had existed they gave the somewhat natural reply that there was no evidence as to the length of time. Measured by itself this answer was literally correct but the testimony of the plaintiff shows unmistakably that the defect was not of sudden occurrence, for the condition of the face of the hammer described by the plaintiff could not have been caused except by continued use. Again, the undisputed testimony regarding the defective hammers and the repeated promises to provide new ones, together with the description of the one which caused the injury must be given due significance, and while it is impossible to see from the finding how many days or weeks the hammer had remained in a defective condition, it is quite clear from all the testimony that the battered, uneven surface of the hammer must have come about by some considerable length of usage, which in view of the complaints and promises, indicate clearly enough negligence on the part of the defendant.

The other view might be taken that the jury so improperly answered the question and so failed to heed the evidence as to deprive the parties of a fair trial, but the situation is such that the rule of harmonizing renders a reversal unnecessary. *Railway Co. v. Dorr,* 73 Kan. 486, 85 Pac. 533, is relied on. There, however, a verdict for $35,000 for an injury and the express finding that the company had no actual knowledge of the existence of a defect led the court to examine with great care the other finding that the defect had existed "for some time previous to the accident," and to hold that this finding was too indefinite to support the remarkable verdict. There the jury were pressed for a second and more definite answer, which they refused to make. Here a definite question might well have received a definite answer. This is an instance of an inconsistency between special findings and a general verdict wherein every reasonable presumption should be indulged in favor of the latter. (*Morrow v. Bonebrake,* 84 Kan. 724, 115 Pac. 585; *Lewellen v. Gas Co.,* 85 Kan. 117, 116 Pac. 221.) It is not a case in which a judgment on the special findings is compelled. (*Osburn v. Railway Co.,* 75 Kan. 746, 90 Pac. 289.) In *Hinze v. City of Iola,* 92 Kan. 779, 142 Pac. 947, it was held

that an answer to a question as to how long a certain condition had existed the jury replied "we don't know," did not amount to a denial of the existence of such condition but to an assertion that the evidence failed to show the duration of such existence.   (See *Springer v. Railroad Co.,* 95 Kan. 408, 148 Pac. 611.)

The judgment is affirmed.