No. 26,627.

COMMERCE TRUST COMPANY, Substituted for the MIDWEST RESERVE TRUST COMPANY, *Appellee,* v. PIONEER CATTLE LOAN COMPANY, DAVE FREEMYER, H. S. BUCK, GEORGE LANDIS, ED H. SMITH and FRED LAKE, *Appellants.*

SYLLABUS BY THE COURT.

1. TRIAL—*Verdict—Findings Inconsistent With General Verdict.* A motion for judgment on the special findings, notwithstanding the general verdict, should not be sustained unless the special findings are so inconsistent with the general verdict that the latter cannot stand.

2. SAME—*Motion for Judgment on Special Findings—Evidence.* A motion for judgment on the special findings, notwithstanding the general verdict, concedes, for the purpose of the motion, that the findings are sustained by the evidence.

3. BILLS AND NOTES—*Accommodation Paper—Holder in Due Course—Liquidating Agent of Accommodated Party.* The liquidating agent of an insolvent trust company, the accommodated party to a negotiable instrument, is not necessarily a holder for value, within the meaning of R. S. 52-303, 52-306, so as to enable it to recover from the accommodating party when the accommodated party cannot do so.

Appeal from Barber district court; GEORGE L. HAY, judge. Opinion filed April 10, 1926. Reversed.

*Chester I. Long, J. D. Houston, Austin M. Cowan, Claude I. Depew, James G. Norton, W. E. Stanley,* all of Wichita, *Adrian S. Houck* and *A. L. Orr,* both of Medicine Lodge, for the appellants.

*Samuel Griffin, W. E. York,* both of Medicine Lodge, *Armwell L. Cooper, Ellison A. Neel* and *William E. Kemp,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action against the maker and indorsers of a promissory note for $10,000. Only the indorsers defended, and they will hereafter be spoken of as defendants. It was tried to a jury, which answered special questions and returned a general verdict for defendants. Plaintiff's motion for judgment in its favor upon the answers to the special questions, notwithstanding the general verdict, was sustained. The defendants have appealed.

A brief statement of the circumstances out of which the con-

Appeal and Error, 4 C. J. p. 773 n. 5. Bills and Notes, 8 C. J. pp. 259 n. 43, 260 n. 47, 266 n. 11. New Trial, 29 Cyc. p. 836 n. 76. Trial, 38 Cyc. pp. 1922 n. 34, 1926 n. 77, 1930 n. 1, 1933 n. 42.

troversy arose is, in substance, as follows: The Pioneer Cattle Loan Company was incorporated June 15, 1921. For some two years prior thereto Dave Freemyer, president of the Lake State Bank (and associated with him were the stockholders of the bank, including defendants herein), had been making loans to cattle men secured by chattel mortgages on live stock and feed. This business was done under the name of the Pioneer Cattle Loan Company, and the loans were negotiated to banks, or investors, at Kansas City and elsewhere. Many of these notes had been negotiated to the Midwest Reserve Trust Company. On June 21, 1921, Virgil Smith, representing the Midwest Reserve Trust Company, went to Lake City and took with him four notes which had been negotiated to that company by the Pioneer Cattle Loan Company and which were past due. They aggregated $13,932.62. Mr. Freemyer, as president of the Pioneer Cattle Loan Company, executed a new note for the aggregate of the four notes just mentioned and delivered the same to Mr. Smith for the Midwest Reserve Trust Company, the old notes of the customers to be held as collateral security for this new note. On the same occasion Dave Freemyer executed another note for $10,000, payable on demand, to the Pioneer Cattle Loan Company, or its order, and by it indorsed. This note represented no new loan nor any specific past due paper. Mr. Smith and Mr. Freemyer went to the several defendants herein, H. S. Buck, George Landis, Fred Lake and Ed H. Smith, stockholders in the Pioneer Cattle Loan Company, and procured their signatures as indorsers on this $10,000 note. This is the note sued on in this action. The petition, filed November 23, 1921, contains the ordinary allegations for an action upon a promissory note. On February 27, 1922, an amended petition was filed. On April 14, 1924, the Commerce Trust Company was, by leave of court, substituted for the Midwest Reserve Trust Company as plaintiff, and thereafter filed its amended petition. This is the petition upon which the case was tried. It contained the additional allegations that the trust company had assigned, transferred and delivered the note to the plaintiff, the Commerce Trust Company, for value, and that the Commerce Trust Company is now the owner and holder thereof; and further alleged "that prior to the assignment and delivery of said note to plaintiff, and prior to the institution of this suit, the Midwest Reserve Trust Company presented said note for payment to the maker thereof, and did on the same day duly make demand for

payment on each and all of said defendants, but that each and all of said defendants failed and refused to pay the same, or any part thereof. It was not alleged that the defendants, or any of them, had waived presentation for payment, or notice of dishonor. The defendants pleaded that the Midwest Reserve Trust Company had ceased to exist as a corporation more than a year prior to the substitution of the Commerce Trust Company as plaintiff, and that the action had not been revived; denied that the Commerce Trust Company is the owner and holder of the note or the real party in interest, and denied that the note had ever been assigned, transferred and delivered to the Commerce Trust Company. The defendants admit the execution and indorsement of the note, but allege that they received no consideration for their indorsement, and that they placed their names thereon at the special instance and request of the Midwest Reserve Trust Company through its agent, Virgil Smith, and solely for the accommodation of the Midwest Reserve Trust Company. The reply was a general denial. The jury answered special questions as follows:

"1. Did the Pioneer Cattle Loan Company by its president, Dave Freemyer, and its secretary, Clara Groendycke, execute a note in the amount of $10,000 payable to its own order and dated June 21, 1921, and deliver same to the Midwest Reserve Trust Company through Virgil Smith, its representative or agent? A. Yes.

"2. If your answer is 'yes,' was said note indorsed on the back by the Pioneer Cattle Loan Company by Dave Freemyer, president, Dave Freemyer, H. S. Buck, George Landis, Ed H. Smith and Fred Lake prior to its delivery? A. Yes.

"3. If your answers to the first two questions are 'yes,' was said $10,000 note so executed, indorsed and delivered for the purpose of better securing preexisting obligations or indebtedness of the Pioneer Cattle Loan Company to the Midwest Reserve Trust Company? A. Yes.

"4. If your answers to questions one and two are 'yes,' did the Midwest Reserve Trust Company apply said $10,000 note as a $10,000 payment on a note executed by the Pioneer Cattle Loan Company in the amount of $13,-932.62, bearing date of June 21, 1921, and payable to its own order, and at the time held and owned by the Midwest Reserve Trust Company? A. No.

"5. If your answers to one and two are 'yes,' was said $10,000 note so executed, indorsed and delivered as an inducement to the Midwest Reserve Trust Company to forbear bringing suit at that time on past due negotiable notes indorsed by the Pioneer Cattle Loan Company and at the time held and owned by the Midwest Reserve Trust Company? A. No.

"7. Did Virgil Smith, as agent for the Midwest Reserve Trust Company, demand payment of said $10,000 of Ed H. Smith as an officer of the Pioneer

Commerce Trust Co. v. Pioneer Cattle Loan Co.    ·

Cattle Loan Company on or about the 22d day of November, 1921, demand payment of said note of the other indorsers, to wit: H. S. Buck and Fred Lake? A. 'No' as to Ed H. Smith, officer of said company, 'yes' as to indorsers of said note.

"8. Did the defendants H. S. Buck, Fred Lake, George Landis and Ed H. Smith indorse the note herein sued on for the accommodation of the Pioneer Cattle Loan Company? Or if you find that some of said so indorsed for the accommodation of the Pioneer Cattle Loan Company, and others did not, then state those who did so indorse said note for the accommodation of the Pioneer Cattle Loan Company. A. They did not.

"9. Did the Midwest Reserve Trust Company sell and dispose of all its assets, including the note sued upon on November 7, 1921, and before this suit was begun on November 23, 1921? A. Yes.

"10. Did the Midwest Reserve Trust Company cease to do business on November 7, 1921? A. Yes.

"11. Do you find that the defendants H. S. Buck, Fred Lake, George Landis and Ed H. Smith indorsed the note sued on for the accommodation of the Midwest Reserve Trust Company? A. Yes.

"13. Do you find that the defendants H. S. Buck, Fred Lake, George Landis and Ed H. Smith indorsed the note sued upon on the assurance of the Midwest Reserve Trust Company or its representative, Virgil Smith, that the indorsers would not be held liable thereon? A. Yes.

"15. (To the same effect as No. 2.)

"16. Did the defendants Fred Lake, H. S. Buck, George Landis and Ed H. Smith, or any of them, receive any money or other thing of value for their indorsement on the $10,000 note sued upon? A. No.

"17. Was there any agreement between Virgil Smith, representative of the Midwest Reserve Trust Company, and the defendants Fred Lake, H. S. Buck, George Landis and Ed H. Smith, or any of them, that the $10,000 note sued upon should be applied to the payment of the $13,932.62 note. A. No.

"18. Was the $10,000 note sued upon used for a different purpose and in a different manner than that agreed upon between Virgil Smith, representative of the Midwest Reserve Trust Company, and H. S. Buck, Fred Lake, George Landis and Ed H. Smith, or any of them? A. Yes."

Appellants contend that the ruling of the court sustaining plaintiff's motion for judgment upon the answers to the special questions, notwithstanding the general verdict, was erroneous, for the reason that the answers to the special questions are not so inconsistent with the general verdict as to require that the latter be set aside. This is the only question before us. The contention must be sustained. The special findings require the setting aside of the general verdict only when they are inconsistent with it. (R. S. 60-2918.) The special finding and the general verdict should be construed in harmony, if that can reasonably be done. (*Bevens v. Smith,* 42 Kan. 250, 21 Pac. 1064; *Seeds v. Bridge Co.,* 68 Kan. 522, 75 Pac. 480; *Lewellen*

*v. Gas Co.,* 85 Kan. 117, 116 Pac. 221; *Tarin v. Railway Co.,* 98 Kan. 605, 158 Pac. 874.)

Appellee argues that the answers to certain of the special questions are not sustained by the evidence, and therefore should be ignored. This argument is not open to appellee. Its motion for judgment upon the answers to the special questions, notwithstanding the general verdict, conceded, for the purpose of the motion, that the answers to the special questions were sustained by the evidence. (*Smith v. Tri-County Light & Power Co.,* 120 Kan. 123, 354, 243 Pac. 331; *Calvin v. Schaff, Receiver,* 118 Kan. 196, 234 Pac. 1006, and cases there cited.) Appellee made no motion to set aside any finding as not being supported by the evidence, or for any reason. It filed a motion for a new trial, which it withdrew without a ruling thereon. It stood in the court below upon the answers to the special questions, and it must stand upon them here.

Appellee seeks to invoke the doctrine stated in *A. T. & S. F. Rld. Co. v. Brown,* 2 Kan. App. 604, as follows:

"Where the jury make both general and specific findings of fact in answer to numerous questions submitted to them by the parties to the action, and it can be seen that the general findings are mere conclusions drawn by the jury from the facts as found in answer to the specific questions, such general findings may be wholly ignored." (Syl. ¶ 1.)

In that case the jury answered 128 special questions. An answer to one of the general questions, in the nature of a general conclusion, was held to be controlled by answers to specific questions relating to the same point, and it was held the latter controlled the former. An analysis of the answers to the special questions in this case disclose no room for the application of that rule here.

Appellee cites *Redden v. Bausch,* 110 Kan. 625, 629, 204 Pac. 752, where it was said:

"We think the evidence does not support the findings as to waiver and that other findings are inconsistent with each other and insufficient to form a basis for a judgment."

In that case a new trial was ordered. It is a reason for granting a new trial that special findings are so inconsistent with each other that they will not sustain any judgment. But we have no question of that kind here. Appellee presented no motion for a new trial for the reason that the special findings are inconsistent with each other, and no question of that kind is presented by this appeal. Appellee's position in the court below, of necessity, was that the special findings

were supported by the evidence, and were consistent with each other, but were so inconsistent with the general verdict that the latter cannot stand (R. S. 60-2918), and hence it was entitled to judgment in its favor.

The jury found (findings 8, 11, 13, 16) that defendants indorsed the note sued upon without consideration and for the accommodation of the Midwest Reserve Trust Company. Appellee contends these findings have no force against the Commerce Trust Company for the reason that it is a holder for value, within the meaning of R. S. 52-303, 52-306. In its petition the Commerce Trust Company did not aver that it was a holder of the note sued upon in due course; in fact, the allegations made are inconsistent with such a holding; but it did allege that it was a holder for value. The court instructed the jury that under the contract entered into between the Midwest Reserve Trust Company, the Commerce Trust Company and the Clearing House Association of Kansas City for the liquidation of the affairs of the Midwest Reserve Trust Company by the Commerce Trust Company, if this note was transferred and delivered to the Commerce Trust Company under such agreement, then the title to the note in suit was transferred to the Commerce Trust Company; and further instructed the jury that such written document imports a consideration for the transfer, and in the absence of evidence to the contrary the jury would be warranted in finding that such transfer was for value, but left to the jury the question of whether or not the Commerce Trust Company was a holder for value within the meaning of the statute last referred to. No special question was submitted to the jury as to whether or not the Commerce Trust Company was a holder for value. The general verdict for defendants is the only answer of the jury to that question, and it is that such transfer did not constitute the Commerce Trust Company a holder for value. Appellee argues that the evidence discloses that the Commerce Trust Company was a holder for value. There are two answers to this argument: (1) The jury found against appellee on that question under instructions submitting that question to the jury, and which are not complained of, and under what we must assume was evidence to justify such finding, since the evidence is not before us; and (2) an examination of this agreement, as shown by the record, indicates that the Commerce Trust Company would be more properly designated as the liquidating agent of the

Midwest Reserve Trust Company, a term which was applied to it by one witness, rather than on outright purchaser for value of the note sued upon. It really was winding up the affairs of the Midwest Reserve Trust Company under an agreement with that company and with the clearing house association, and no reason suggests itself why its right to maintain a suit upon this note should be any greater than that of the Midwest Reserve Trust Company had it been maintaining this action, and it is fundamental that an accommodated party to an instrument cannot recover from the accommodating party.

Our attention is directed to finding No. 9. This question was obviously submitted to form a basis to justify the substitution as plaintiff of the Commerce Trust Company for the Midwest Reserve Trust Company, upon the theory, as stated by the court in his instructions, that if the action were originally brought in the name of the wrong party plaintiff, it was proper to substitute the correct plaintiff. It does not purport to be, and is not, a finding that the Commerce Trust Company is a holder for value of the note sued upon.

Appellee lays much stress upon finding No. 3, that this note was indorsed by these appellants for the purpose of better securing preexisting obligations or indebtedness of the Pioneer Cattle Loan Company to the Midwest Reserve Trust Company, but there is no finding that such preëxisting obligations or indebtedness had not been paid; in fact, we see no contention of that kind in the record. This note sued upon was without consideration, as far as the appellants were concerned, and even though it were given the better to secure preexisting obligations and indebtedness of the Pioneer Cattle Loan Company to the Midwest Reserve Trust Company, there could be no liability upon it if such prior indebtedness had been paid.

Analyzing these special findings, we find nothing in them so inconsistent with the general verdict that the latter cannot stand. On the other hand, material questions submitted to the jury by the instructions, upon which no special questions were asked, were decided in favor of defendants by the general verdict. One of these questions, whether the plaintiff was a holder for value, has been discussed. Others suggested we do not deem it necessary to discuss.

The judgment of the court below will be reversed, with directions to enter judgment for defendants upon the general verdict.