MOLLIE J. WILLIAMS, *Appellee*, v. W. H. WITHINGTON, *Appellant*.

No. 17,973.

SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Automobile — Husband Driving Buggy — Imputed Negligence.* A woman who with a child in her lap goes riding about nine o'clock at night in a single seated buggy drawn by a gentle horse driven by her husband, and who does not exercise or attempt to exercise any control over the vehicle or the driver, is not chargeable with the negligence of the husband in failing to see and avoid an automobile approaching from the side on which the husband is sitting.

2. SPECIAL QUESTIONS—*Prolixity and Confusion to be Avoided.* Special questions are not for the purpose of subjecting the jury to a process of technical and microscopic cross-examination, or of requiring them to distinguish between elements of injury beyond the ken of the anatomist and the metaphysician, but to show the chief ultimate facts.

Appeal from Montgomery district court. Opinion filed February 8, 1913. Affirmed.

*Chester Stevens,* of Independence, for the appellant.

*Thos. E. Wagstaff,* and *Edward H. Chandler,* both of Independence, for the appellee.

The opinion of the court was delivered by

WEST, J.: Main street in Cherryvale runs east and west and is intersected by Liberty street running north and south. At the intersection, and thence some distance east and west, Main street is paved with brick,

the pavement being forty feet in width with a cement curb on each side six inches above the surface of the pavement. Liberty street is paved with brick for one block north, the pavement being thirty feet wide with a curb similar to the one on Main street. At about nine o'clock on the evening of June 26, 1910, the plaintiff was riding in a single-seated one-horse buggy driven by her husband, who sat on the right side. She held one child in her lap and another sat between her and her husband. As the buggy was coming west on the north side of Main street approaching the intersection the horse was driven diagonally across towards the south side as it approached Liberty street, and when within about fifteen feet therefrom the defendant, coming in his automobile down the east side of Liberty street, turned into Main and when the buggy was four or five feet from the south curb line of Main street the automobile struck the right hind wheel of the same, injuring the buggy, throwing the plaintiff forward into the wheel and injuring her. Plaintiff sued for damages, alleging, among other things, that there was an electric arc light about twenty feet above the center of the intersection of the two streets which cast sufficient rays on and around the vicinity to enable the defendant to see for 150 feet what objects, vehicles or persons there were upon the streets; that he recklessly and carelessly drove his machine south at a very high rate of speed, to wit, about twenty miles an hour, and along the east side of Liberty street at a reckless rate, to wit, about eighteen miles an hour, crossing the northwest corner of the intersection and then in a southeast direction crossing Main street, having his face turned towards the opposite side of the street and away from the direction in which he was running; that had he looked ahead he could have seen the buggy; that he gave no warning or signal of his approach at any time, but while crossing Main street in a southeast

direction was engaged in conversation with two ladies in the back seat of his car. The jury returned a verdict for $600. A demurrer to the evidence, a motion for judgment on the special findings, and a motion for new trial were overruled. The defendant appeals and plaintiff files a cross-appeal alleging error in the reduction of the verdict.

The jury found, among other things, that there was room to have driven the horse along the north side of Main street where the accident occurred, the condition of the street being such as to afford an easy and safe passageway for the horse and buggy; that the horse was driven across the center and over to the south side of Main street just prior to the collision, to which the plaintiff made no objection; that the automobile crossed the center of the intersection toward the south side of Main, coming down Liberty street at from ten to twelve miles an hour, which rate was not decreased when it crossed the intersection, or when the collision occurred; that there were four lamps on the front of the automobile lighted at the time and one on the rear; that plaintiff, had she looked, could not have seen the light before it reached the intersection and prior to the accident, and that she did not see it and could not have seen it until on the south side of Main street; that when she could have first seen the light the horse and buggy were thirty or forty feet southeast of the intersection; that plaintiff could not have seen the auomobile when it approached and crossed the intersection just prior to the collision; that the automobile was in the usual route of travel generally pursued in passing east on Main street and that the defendant did not see the horse and buggy before the light from his machine fell upon it; that there was not room between the horse and the south curb of Main street for the defendant to safely drive his automobile; that he did not just before the accident turn to the left to avoid

collision; that after the plaintiff and her husband saw
the automobile just before the collision they continued
to drive toward the south curb of the intersection, and
were four or five feet from the curb and fifteen feet
from the intersection when the collision occurred; that
the plaintiff could not have seen the automobile before
it reached the intersection had she been looking. They
further found that she was in possession of all her
faculties of sight and hearing and did nothing to avoid
the collision after she saw or should have seen the
automobile and just prior to the collision. The plain-
tiff's husband testified that the defendant said it was
all his fault and he would pay the damages. Another
witness testified that afterwards he had a talk with
the defendant in which the latter said he guessed it
was his fault and that he offered to pay what was right
and would have sent for a doctor if they had wanted it.

There was no error in overruling the demurrer to
the evidence.

Complaint is made of the rejection of certain evi-
dence, but this does not appear to have been brought
to the attention of the trial court on the motion for
new trial, as required by section 307 of the civil code.
Neither do we find any error in the refusal to render
judgment on the special findings. It remains to be
considered whether the motion for new trial was
wrongfully denied. Complaint is made that the in-
structions were not sufficient on the question of con-
tributory negligence, although none was offered by
the defendant. We have examined those given and
find that they were as strongly in the defendant's favor
as he was entitled to. It is now argued, however, that
the jury should have been told that plaintiff's failure
to observe the law of the road by turning to the right,
if without excuse, was a bar to her recovering; that if
she neglected to look when she should or could have
seen the automobile approaching, this would prevent

her recovering. It is also argued· that she was either guilty of contributory negligence in these respects or else her husband's negligence is to be imputed to her, although the jury found that she had no control over the buggy, the horse or the driver. The seventh instruction was to the effect that it was her duty to exercise ordinary care on her part and as far as she could control the vehicle and direct and control the driver, to observe the law of the road and keep to the right, and to use her senses and exercise the care of any ordinarily prudent person to avoid injury to herself. Her testimony was in substance that she was holding her child in her lap and paying no attention to the situation or circumstances. That she saw the lights of the automobile but it "was right into us before I saw it." Common sense would dictate that when a wife goes riding with her children in a rig driven by her husband she rightfully relies on him not to drive so as to imperil those in his charge. The law does not depart from common sense by requiring her, under the circumstances shown here, to impugn her husband's ability to drive and assume the prerogative to dictate to him the manner of driving. With one child on her lap and another sitting next to look after she might with human and legal fairness and propriety leave the driving in the exclusive care of the husband and father, at least until she actually saw some danger calling for warning or advice from her, which was not the case in this instance. She frankly testified that she was "scrooched down" holding her baby and "gawking around at things" but not paying attention to the situation or circumstances surrounding the place at the time. So far as imputed negligence is concerned she had a right to trust her husband to so conduct the ride that she could "scrooch down" and "gawk around" and rest, for very likely she was taken on the drive for real rest and relaxation. Although in *Bush v. Railroad*

*Co.,* 62 Kan. 709, 64 Pac. 624, it was held that when one is riding with another for their mutual pleasure, with equal opportunity to see and ability to appreciate the danger and is in fact looking out for herself, she is then chargeable with want of care if she makes no effort to avoid the danger. That was a case involving the crossing of a railroad track by a young couple out driving. One train had just passed and they could have seen the other 1300 feet away had they looked. A similar ruling was made in *Railway Co. v. Bussey,* 66 Kan. 735, 71 Pac. 261. But in *City of Leavenworth v. Hatch,* 57 Kan. 57, 45 Pac. 65, it was held that a young woman riding in a carriage by invitation of the owner, she having no control over the carriage, the horse or the driver, was not barred from recovering for an injury caused by an obstruction in the street, even if the driver was negligent. It was there said:

"We think the law well settled that where the person injured has no right to control the movements of the driver, and does not, in fact, exercise any control, the negligence of the driver can not be imputed to him." (p. 61.)

*Reading Township v. Telfer,* 57 Kan. 798, 48 Pac. 134, was a case of a wife injured while riding with her husband in a vehicle over a defective highway. It was sought to impute to her the negligence of her husband, the driver, and although it was shown that the ride was taken at her solicitation it was decided that she was not to blame for his carelessness. After discussing the headship of the husband in spite of the equality of the sexes it was said:

"All sentiments and instincts of manhood and chivalry impose upon him the obligation to care for and protect his weaker and confiding companion; and all these justify the assumption by him of the labors and responsibilities of the journey, with their accompanying rights of direction and control." (p. 802.)

Interesting discussions of the question will be found in 1 Thompson's Commentaries on the Law of Negligence, §§ 502-504; also in *Shultz v. Old Colony Street Railway,* 193 Mass. 309, 79 N. E. 873, 118 Am. St. Rep. 502, 8 L. R. A., n. s., 597, and note; Note, 21 L. R. A., n. s., 672; 29 Cyc. 542, 543; *Southern Railway Co. v. King,* 128 Ga. 383, 57 S. E. 687, 11 L. R. A., n. s., 829; *Louisville Ry. Co. v. McCarthy,* 129 Ky. 814, 112 S. W. 925, 19 L. R. A., n. s., 230. In the note to the Shultz case in 8 L. R. A., n. s., 656, the cases are collated and abundant support is found for the doctrine announced by Mr. Justice Field in *Little v. Hackett,* 116 U. S. 366:

"But, as we have already stated, responsibility can not, within any recognized rules of law, be fastened upon one who has in no way interfered with and controlled in the matter causing the injury." (p. 379.)

This was said with reference to a hack case, but upon principle, the same principle, the wife can not be held responsible for her husband's negligence unless he was in some degree acting under her authority or direction. True, she would still be liable for her own failure to exercise due care, but the jury found in her favor in this respect and we do not think her own evidence destroys such finding.

Some of the answers to special questions are apparently inconsistent, but no point seems to be made on that ground, and if it were, they can be reconciled with one another and with the general verdict without doing real violence to their verbiage.

In this case, free from unusual difficulty, to recover $2000, eighty-five special questions were submitted to the jury, and their very profusion necessarily tended to befog. The purpose of the statute providing for the submission of special questions was not to put the jury through a process of technical and microscopic cross-examination, and the trial court might well have refused three-fourths or more of the queries which cum-

ber this record. (*Mo. Pac. Rly. Co. v. Holley,* 30 Kan. 465, 472, 1 Pac. 130, 554; *Mo. Pac. Rly. Co. v. Reynolds,* 31 Kan. 132, 136, 1 Pac. 150; *Railway Co. v. Lycan,* 57 Kan. 635, 646, 47 Pac. 526; *Evans v. Moseley,* 84 Kan. 322, 332, 114 Pac. 374.)

The method so often indulged in of requiring the jury to separate the damages so as to distinguish between elements of injury which would puzzle the anatomist and the metaphysician is also vanity and vexation of spirit. Of course, under the present statute it is the duty of the court to submit proper and material questions to show the chief ultimate facts, but if the number and character were properly limited, much waste of time, confusion and prolixity would be avoided.

We find no material error of which the defendant can justly complain.

The plaintiff, by cross-appeal, seeks to reverse the action of the trial court in deducting $250 awarded for permanent injuries. The jury allowed $125 for injuries to the hip, $100 for injuries to the ankle and $125 for injuries to the back. We do not think the testimony indicates that the plaintiff received any permanent injuries, and therefore we find no error in deducting the sum awarded therefor.

The judgment is affirmed.