No. 19,986.

MOLLIE J. DENTON, *Appellee,* v. THE MISSOURI, KANSAS & TEXAS RAILWAY COMPANY, *Appellant.*

### SYLLABUS BY THE COURT.

AUTOMOBILE—*Driven by Husband—Collision—Injuries to Wife—Negligence.* The evidence and special findings of fact examined and held that a woman who was riding in an automobile driven by her husband and who was injured by a collision between the' automobile and a switch engine on a street crossing was not guilty of negligence as a matter of law.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed March 11, 1916. Affirmed.

*W. W. Brown, James W. Reid, E. L. Burton,* and *J. W. Iden,* all of Parsons, for the appellant.

*C. E. Pile, W. D. Atkinson,* and *L. E. Goodrich,* all of Parsons, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for injuries which a woman, riding in an automobile driven by her husband, sustained by being struck by a switch engine on a street crossing in the defendant's yards in the city of Parsons. The plaintiff recovered and the defendant appeals.

The plaintiff, her husband, F. M. Denton, her son, E. E. Denton, and her son's wife occupied the automobile. F. M. Denton, sitting on the right-hand side, was driving the car. E. E. Denton occupied the front seat with the driver. The plaintiff and her daughter-in-law occupied the rear seat. Crawford avenue in the city of Parsons extends east and west across the defendant's tracks, twenty-four in number, and the automobile was proceeding toward the west. In the midst of the tracks and north of the crossing stood a car barn. On the first track west of the car barn stood a stock car, the south end of which was in the street. On the next track toward the west stood a coal car, the south end of which was a few feet north of the south end of the stock car. A switch engine moving toward the south on the third track west of the car barn struck the automobile. The engine bell was ringing at the time and a track foreman of the defendant testified it could be heard at a distance of four hundred or five hundred yards. The plaintiff and her husband had not been on the crossing before. The plaintiff's son was an employee of the defendant, was familiar with the crossing, and said to his father that he would look out for trains. He testified there was danger in stopping an automobile there because cars were likely to be moved at any time. The automobile proceeded as slowly as possible without killing the engine, at a speed of about four or five miles per hour. The plaintiff testified that as they entered the crossing she could see tracks covering approximately a block to the west. The tracks seemed to be pretty thick clear across. The east tracks were farther apart than those at the west. The plaintiff had frequently ridden in the automobile with her husband and had confidence in his ability as a driver. She looked for a flagman and saw none. She saw no engine and she heard no bell. The defendant was negligent in not complying with a city ordinance requiring a flagman to be stationed at the crossing. With a

general verdict for the plaintiff the jury returned the following special findings:

"1. Did the plaintiff, just before the collision in question, see cars upon the sidetracks and observe the condition of the crossing with reference to obstructions that would obscure her view of an approaching engine from the north? Ans. Yes.

"2. Did the plaintiff on approaching the crossing at which the collision occurred, see a railroad track beyond the obstructions and know that engines or cars were likely to be passing over said tracks at any time? Ans. Yes.

"3. Did said plaintiff endeavor to have said automobile stopped at any time when passing over the tracks of defendant before it went upon the crossing where the collision occurred? Ans. No.

"4. Did the noise of the automobile prevent plaintiff from hearing the ringing of the bell of the engine, as said engine approached the crossing on which the collision occurred? Ans. No.

"5. What, if anything, did the plaintiff do to avoid the collision? Ans. Looked and listened.

"6. When it first became possible for plaintiff to observe an engine approaching on the tracks where the collision occurred, was the automobile just entering upon said tracks? Ans. Yes.

"7. Was said engine stopped as soon as it could be stopped after the employes of defendant discovered the automobile approaching? Ans. Yes.

"9. If you find for the plaintiff, state what elements of damage you include in your verdict. Ans. Bodily pain and permanent injury.

"10. Was the automobile on approaching the crossing, under the control of the operator so that it could have been stopped at any point before entering upon the crossing? Ans. Yes.

"11. Do you find that the view of the defendant's employes who were riding upon said engine was obstructed by the cars so that they could not see the approaching automobile until it came from behind the cars about six or seven feet from the crossing? Ans. Yes.

"12. Do you find that the employes of the defendant made every effort, after discovering the automobile, to stop said engine and to prevent the collision? Ans. Yes."

The defendant's principal contentions are that the plaintiff was guilty of negligence as a matter of law and that judgment should have been rendered for the defendant on the findings of fact.

This is a second appeal. (*Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558.) A paragraph of the syllabus of the first opinion reads as follows:

"Where a woman is injured through the negligence of a railway company, she is not precluded from recovery by the fact that a contribut-

ing cause of her injury was the failure of her husband to exercise due care in the management of the automobile in which they were riding." (¶ 4.)

This is the law, and the plaintiff can be defeated only because of her own negligence. (Note, L. R. A. 1915 B, 953.)

The plaintiff was required to take the precautions which a reasonably prudent person, not in the situation of the automobile driver, but in her situation, would have taken. The argument is that she should have stopped the automobile or should have called her husband's attention to the conditions and requested him to exercise reasonable care. Why should the plaintiff have called her husband's attention to the conditions and exhorted him to use due care? She had confidence in his ability as a driver. The conditions were just as obvious to him as to her. He could see and hear all she could see and hear. He was responsible for the operation of the automobile, not she, and she had no reason to doubt that he was exercising his faculties with diligence. Besides this, there was another observer in the front seat with the driver who was in fact familiar with the crossing. His safety and his wife's safety were at stake, and there is no evidence of any fact indicating to the plaintiff that her son was not exercising his faculties of observation with diligence. Why ought the plaintiff to have arrogated to herself control over the automobile and command it to stop? The finding is that she saw a track beyond the obstructions to her vision and knew engines and cars were likely to pass over it at any time. There is no finding and no evidence that from her place in the back seat she could see this track was so close to the one on which the coal car stood that the automobile would be in danger before her husband on the front seat could see toward the north. Her opportunities of observation were not equal to those of her husband. She knew his ability as a driver and trusted him, and what is more, she had the right to trust him.

In the case of *Williams v. Withington,* 88 Kan. 809, 129 Pac. 1148, it was said:

"Common sense would dictate that when a wife goes riding with her children in a rig driven by her husband she rightfully relies on him not to drive so as to imperil those in his charge. The law does not depart from common sense by requiring her, under the circumstances shown here, to impugn her husband's ability to drive and assume the prerogative to dictate to him the manner of driving." (p. 813.)

This doctrine applies to the case of a wife riding in an automobile driven by her husband, unless she should know him to be incompetent or under some disability.

In the case of *Bush v. Railroad Co.*, 62 Kan. 709, 64 Pac. 624, cited by the defendant, the person injured was not relying on the driver of the vehicle in which she was riding, was looking out for herself independently of him, had equal opportunity with him to see and appreciate the danger which threatened them, and in fact was the first to see the approaching train. In the case of *Railway Co. v. Bussey*, 66 Kan. 735, 71 Pac. 261, cited by the defendant, the person injured did nothing at all for her own safety. She did not even look or listen although in the presence of danger, and the accident might have been prevented had she done so.

The result is the question of the plaintiff's negligence was properly submitted to the jury. The finding that she exercised due care for her own safety, included in the general verdict, is sustained by the evidence, and judgment for the defendant on the special findings was properly denied.

The court had no authority, on application by the defendant, to require the plaintiff to join her husband as a defendant. The subject of the ringing of the bell was sufficiently presented to the jury by the instructions given.

The judgment of the district court is affirmed.