No. 20,057.

A. V. ANGELL and EMILY J. ANGELL, *Appellees,* v. THE CHICAGO ROCK ISLAND & PACIFIC RAILWAY COMPANY et al., *Appellants.*

SYLLABUS BY THE COURT.

1. RAILROAD CROSSING — *Injuries — Actionable Negligence Shown.* The evidence held to warrant a finding of actionable negligence on the part of a railway company with respect to a crossing accident.

2. SAME—*Injuries—19-year-old Girl—Carriage Driven by Another—Negligence.* It can not be said as a matter of law that a girl of nineteen, riding in the rear seat of a carriage driven by her brother-in-law, is bound to advise him with respect to the management of the team on approaching at night a railroad crossing where obstructions prevent a view of the track from a greater distance than about fifteen feet, although she is familiar with the surroundings and he is not.

3. PRACTICE — *Amendment to Pleading During Trial — Judicial Discretion.* It is not an abuse of discretion to refuse a request, made after the impaneling of a jury, to allow an answer, which alleges only personal contributory negligence on the part of the person for whose death a recovery is sought, to be amended so as to charge also imputed negligence.

4. RAILROAD CROSSING—*Habit of Person Killed May be Shown.* Upon the issue whether a person killed in a crossing accident had looked and listened for a train upon approaching a railroad crossing, his habit in that regard may be shown.

5. TRIAL—*No Prejudicial Error in Instructions.* Rulings relating to instructions held to be either correct or nonprejudicial.

6. PRACTICE — *Separate Defendants — Represented by Separate Attorneys—Error to Deny the Right.* The fact that several defendants, whose interests are not entirely similar, have in the earlier stages of a case been represented by the same counsel, does not prevent their insisting upon being heard through separate attorneys at the trial. And the refusal of the court to allow one of them to have the adverse witnesses cross-examined in his behalf by his own lawyer is such a denial of his right to a full hearing as to require a new trial.

Appeal from Meade district court; GORDON L. FINLEY, judge. Opinion filed April 8, 1916. Affirmed as to the railway company; reversed as to the other defendants.

*Paul E. Walker*, and *Luther Burns*, both of Topeka, for. appellant The Chicago, Rock Island & Pacific Railway Company.

*John W. Davis*, of Greensburg, for appellants J. W. Crowley and H. B. Johnson.

*C. A. McNeill, Charles Stephens, Lee Shepherd*, all of Columbus, and *F. B. Wheeler*, of Pittsburg, for the appellees.

The opinion of the court was delivered by

MASON, J.: Goldie Angell, nineteen years of age, was killed in a collision between a Rock Island passenger train and a carriage in which she was riding. Her parents recovered a judgment against the railway company and its engineer and fireman, and they appeal.

The accident occurred at about half past ten o'clock on a moonlight night, in Plains, a city of the third class, having about 400 inhabitants, at a much traveled crossing—the only one for a distance of half a mile in either direction. The railroad runs approximately east and west. The train came from the east, the carriage from the north. A view of the track to the east from a vehicle approaching from the north was cut off, until the observer should be about fifteen feet from the track, by the station and other buildings, by some box cars standing upon the house track fifty feet to the north, and by a signboard 60 to 70 feet north of that. An ordinance prohibited trains from running faster than ten miles an hour within the corporate limits. The mayor had written to the company to the effect that a speed of twenty miles an hour would not be objected to if the street were kept free from standing cars for its entire width. The jury found that the train was making forty miles an hour at the time of the accident. There was evidence that no bell was rung and that a whistle was blown while the train was more than a mile from the station, but not later.

(1) The jury based its verdict on three forms of negligence—failing to give a proper warning, violating the speed limit,

44—97 KAN.

and blocking the view of an approaching train. The defendants maintain that neither the failure to give a proper warning nor the speed of the train was a proximate cause of the accident, and that the obstruction of the view of the track was not negligent. On the first proposition the substance of the argument seems to be that if the occupants of the carriage had been exercising any reasonable degree of care they would have heard the whistle or the noise of the train, and that as they were paying no attention to the matter whatever they would not have heard the whistle if it had been blown again or the bell if it had been rung. Whether that was the case was a question of fact which the jury must be regarded as having determined against the defendant. With regard to the violation of the ordinance, it is argued that as the driver testified that he did not see the train before the team was upon the main line and the front wheels of the carriage were going upon the crossing the accident would have occurred if the rate had been but twenty miles an hour, or even ten. There was also evidence, however, that the engine struck the rear wheels of the carriage, so there is room for the inference that if the speed had been ten miles an hour, or even twenty, the driver would have been able to cross in safety. The effect of the mayor's statement that under certain conditions the violation of the ordinance would not be objected to is therefore not important, but as such a regulation has the force of law (*Denton v. Railway Co.*, 90 Kan. 51, 55, 133 Pac. 558) the suggestion that it could be nullified or modified otherwise than by repeal or amendment lacks plausibility (see 33 Cyc. 977; *Garber v. St. Louis Southwestern Ry. Co. of Texas*, [Tex. Civ. App. 1909] 118 S. W. 857). The obstruction of view which the plaintiff relied on as constituting negligence on the part of the railway company was that due to the placing of the freight cars on the house track. The company maintains that although the cars were so placed as to have that effect, no showing was made that such arrangement was unnecessary or improper. The fact that the view was so far cut off by other obstructions, which presumably were necessary, warranted the conclusion that if practicable the cars should be so placed as not to restrict it still further. There was perhaps room for a finding that some other disposition could and should have been made.

But this element of negligence could be eliminated without requiring a reversal.

(2) The principal contention of the defendants is that the evidence conclusively shows the decedent to have been guilty of contributory negligence. She was familiar with the crossing and had often driven over it. On the night of the accident she went in the carriage, belonging to her parents, with whom she was living, accompanied by two sisters and a younger brother, from their home to attend a revival meeting. Another sister and her husband went with visiting friends in an automobile. All the family knew that they could return in any way they desired, as no plans had been made in that regard. After the services the married sister and her husband expressed a desire to go back in the carriage with the decedent and one of her sisters, and this arrangement was acquiesced in by the others. There was no conversation as to who should do the driving, but the married couple took the front seat and the husband drove. When the carriage reached the point where the street crosses the house track the team was slowed down from a trot to a walk, and was driven to the crossing without stopping and without further slowing up. Nothing was said by any of the party after reaching a point about a block north of the main track until the carriage was on the crossing. The court submitted to the jury the question whether the decedent was negligent in failing to request the driver to stop before attempting to cross, and they specifically found that she used reasonable and ordinary care as the team approached and passed upon the track. The question was a fair one for determination by the jury. The driver testified that he was not familiar with the crossing, although he had been about Plains for two months. Whether this circumstance, if known to his sister-in-law, in view of her own greater familiarity with the surroundings, made it incumbent upon her to advise him as to the management of the team can not be said to admit of only one reasonable opinion. He had assumed the responsibility of driving, and the court can not say as a matter of law that she was bound to distrust his ability or his caution. (*Denton v. Railway Co.*, ante, p. 498, 155 Pac. 812.)

(3) The answers pleaded that the decedent had been personally negligent but did not charge that the negligence of the

driver was imputable to her. After the jury had been impaneled the defendants asked leave to amend by alleging that she was chargeable with his negligence. The request was renewed at the close of the plaintiffs' evidence. Permission to amend was in each instance refused, and the rulings are complained of. The allowance of amendments to pleadings is largely in the control of the trial court, and in view of the late hour at which the request was preferred in this instance its refusal can not be regarded as an abuse of discretion.

(4) A witness for the plaintiffs was permitted to testify that the decedent had been in the habit of looking before driving over this crossing, and that when she saw a train approaching would insist on waiting until it was past. The defendants objected to each question by which this evidence was developed "as incompetent, irrelevant and immaterial; as it calls for the opinion and conclusion of the witness." An argument is made that inasmuch as there was positive evidence of the conduct of the decedent at the time of the accident, no occasion existed for invoking any presumption in the matter. There was direct evidence that she said nothing until the collision had become inevitable, but whether she looked and listened for a train was a matter of inference, upon which her habit in that regard may have had some bearing. (*Railway Co. v. Moffat*, 60 Kan. 113, 55 Pac. 837.) The testimony objected to did not call for a conclusion or for expert opinion. The question of the admissibility of similar evidence has lately been discussed in a case where no decision was found to be necessary. (*Fike v. Railway Co.*, 90 Kan. 409, 417, 133 Pac. 871.) The citations there made show a preponderance of authority in favor of accepting the evidence, and we regard that rule as the better one. Other cases are collected in a note in 14 Michigan Law Review, p. 411.

(5) Complaint is made of the refusal of a number of instructions relating to contributory negligence. The jury were told, in substance, that no recovery could be had if the decedent failed in any duty incumbent on her; that it was her duty to look and listen for a train as the carriage approached the track; and that whether it was also her duty to insist that the driver should stop before driving upon the track was a question of fact for their decision. The defendants maintain that

they were entitled to the more specific instructions which they asked. Each of these is regarded as containing some element justifying the refusal. One related to the conduct of "the occupants of the vehicle," and was open to the interpretation that the decedent might be held responsible for the conduct of others than herself. Another said that if the deceased knew of the approach of the train the failure of the engineer to give a signal was immaterial, ignoring the contingency that, until it was too late to take any effective action herself, she might have reasonably supposed that the driver also knew of its coming and intended stopping. Another stated that the failure of the decedent to remonstrate with the driver was negligence in law, if she saw the approaching train, without referring to the time of her seeing it, thus charging her with negligence although she may have first seen it after the collision had become inevitable. Another placed upon the plaintiffs the burden of disproving contributory negligence. Two others were to the effect that if the decedent could not herself ascertain whether or not a train was coming it was her absolute duty to request the driver to stop. In view of the driver's more advantageous position we think it can not be said as a matter of law that she had no right in that situation to depend upon his judgment. An instruction regarding imputed negligence, on the theory of a common purpose and common right of control, was properly refused because that issue had been excluded. It is contended that the matter of the obstruction caused by the freight cars should have been withdrawn from the jury because it had not been pleaded as a ground of recovery and because there was no evidence of negligent conduct in that regard. The petition alleged that the accident was due solely to the negligent conduct of the engineer and fireman in running at an excessive speed and failing to give any warning at a time when the view was negligently and unnecessarily obstructed by the cars on the house track. Even if these allegations are so construed as to forbid a recovery on account of negligence in placing the box cars, no reversal can be had on that account, because the existence of the other two grounds relied upon was specifically found.

(6) The final complaint is of the refusal of the court to allow an attorney representing the engineer and fireman to

cross-examine the plaintiffs' witnesses. A separate answer had been filed for them, signed by two attorneys, who also signed that of the railway company. When the case was called for trial these attorneys formally withdrew as counsel for the engineer and fireman, and a third attorney announced that he would alone represent them, a notation to that effect being made on the docket. During the trial this attorney, after counsel for the railway company had completed the cross-examination of witnesses for the plaintiff, undertook to cross-examine them in behalf of the other defendants. The trial court refused to allow this, saying that the railway's attorneys had signed all of the papers and represented all three of the defendants at hearings in chambers, and were considered as still representing them, adding that they would not be permitted to withdraw during the trial at any stage of the proceedings. The fact that the same attorneys had prepared the pleadings for all the defendants did not commit them to the policy of being represented by the same counsel throughout the trial. The interests of the railway company and of the engineer and fireman were in some respects dissimilar. For instance, a finding that the negligent obstruction of view by the box cars was the sole cause of the collision would have fastened liability upon the company and exonerated these employees. The individual defendants had a right to present their side of the controversy, unembarrassed by any question of the effect upon the corporation. The cross-examination of the adverse witnesses was an essential part of their presentation. (*McIntosh v. Oil Co.*, 89 Kan. 289, 131 Pac. 151.) Their right in that connection had not been forfeited, and its denial prevented their having the full opportunity for a hearing to which they were entitled. The error requires a new trial as to them, but does not affect the judgment against the company.

The judgment is affirmed as to the railway company, but reversed with directions for a new trial as to the other defendants.