No. 21,224.

AUGUST BURZIO, by his next friend, PAULINE BURZIO, *Appellee*, v. THE JOPLIN & PITTSBURG RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. NEGLIGENCE — *Railroad Crossing — Special Findings — Instructions*. Where a jury has been properly instructed concerning negligence, and reasonable and ordinary care and diligence, the answers to special questions which depend for their interpretation on the definition of those terms, state facts and not conclusions of law.

2. AUTOMOBILE—*Negligence of Driver—No Imputed Negligence to Minor Son.* The negligence of a father in driving an automobile across a railroad track, without stopping, looking, or listening, cannot be imputed to his ten-year-old son who is riding with him.

3. NEGLIGENCE—*Railroad Crossing—Obstructions to View.* Liability of a railway company for injuries to those riding in an automobile, sustained in a collision with a train at a highway crossing, may be founded on the company's negligence in allowing weeds, grass, and brush to grow on its right of way so as to obstruct the vision of those riding in the automobile while they are approaching the railway track.

4. NEGLIGENCE — *Verdict — Findings Interpreted*. The general verdict must stand where the answers to special questions, when properly interpreted so as to support that verdict, are consistent therewith and do not contradict each other.

Appeal from Cherokee district court; JAMES N. DUNBAR, judge. Opinion filed January 12, 1918. Affirmed.

*John P. Curran*, of Pittsburg, and *S. L. Walker*, of Columbus, for the appellant.

*C. A. McNeill*, and *Maurice McNeill*, both of Columbus, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The defendant appeals from a judgment rendered in favor of the plaintiff for injuries sustained by him in a railroad-crossing accident.

The plaintiff, a boy ten years old, was riding with his mother in the rear seat of an automobile driven by his father. The father attempted to drive the automobile across the railway track in front of an approaching electric car. At the

place of the accident, the track ran in a straight line for some distance north and south, and ran parallel with a public road near the railroad right of way. John Burzio, the plaintiff's father, with the plaintiff and the plaintiff's mother, left his home to go to Pittsburg, and for some distance, going north, traveled along the side of the defendant's railroad and saw the car, with which the automobile collided, going north. The electric car and the automobile passed each other once or twice during the trip. At the place of the accident, a road running east and west crossed the railroad track. About five and one-half feet west of the track, and for two hundred feet south of the east-and-west road, there was a hedge which prevented a view of the railroad, and between the hedge and the railroad there was a growth of brush, weeds, and grass which, for a portion of the distance, prevented a view of the railroad from the public road running east and west. After turning east from the road running north and south, to cross the railroad track, and for about fifteen feet from the railroad track, there was an unobstructed view of the track to the south for two hundred feet or more. John Burzio turned east and attempted to cross the railroad. He did not see the car coming until he was on the track. He slowed down his car before he crossed the track. The electric car struck the automobile and injured the plaintiff. To recover for that injury he brought this action.

The plaintiff alleged that the defendant negligently permitted the growth of vegetation, hedge, weeds, and underbrush; that the defendant, on the occasion of the accident, did not give any warning of the approach of the electric car; and that the defendant failed to provide the electric car with good and sufficient brakes so that it could be quickly stopped, and failed to provide the electric car with a good and sufficient whistle or other signal with which to warn persons of danger. The jury, on questions requested by the plaintiff, made special findings of fact as follows:

"No. 1. Was there a growth of hedge, or grass, or weeds or underbrush on defendant's right of way, that obstructed the view to the south of one traveling past in an automobile on the road plaintiff was injured on, if injured, to that extent that an occupant of the automobile could not, with reasonable and ordinary care and diligence, have seen

the approaching car until too near the crossing to avoid injury? Answer: Yes.

"No. 2. Was the defendant negligent in failing to keep its right of way and the approach to the track reasonably free from weeds, grass, and underbrush, thereby obstructing the view of cars coming from the south by persons going east in an automobile, until practically upon the track? Answer: Yes.

"No. 3. If you answer questions numbers 1 and 2 in the affirmative, state whether or not such conditions contributed to plaintiff's injury, if any? Answer: Yes.

"No. 4. Was the defendant negligent in failing to give reasonable notice, alarm and warning of the approach of its line car to the crossing in question? Answer: Yes.

"No. 5. Did the defendant's agents and employees in charge of the line car, have notice and knowledge of the fact that an automobile with occupants was approaching the crossing in question? Answer: No.

"No. 6. Was the line car of the defendants equipped with a whistle for giving warning or alarm? Answer: No.

"No. 7. Was the line car equipped with air brakes? Answer: No.

"No. 8. Did the plaintiff, August Burzio, do anything that was careless or negligent at or prior to the time of his injury which contributed thereto? Answer: No."

On questions requested by the defendant the jury answered as follows:

"Question 1. How fast was the automobile going (miles per hour) as it turned east and approached the railroad track? Answer: 8 miles per hour.

"Question 2. How many feet west of the west line of the railway right of way was the hedge row which plaintiff claims obstructed the view of the driver of the automobile? Answer: Five ft. five in.

"Question 3. How far south down the railroad track could the driver of the automobile have seen the approaching electric car after he turned the corner and just before he drove from a place of safety onto the railroad track, had he stopped the automobile and looked or listened for a car? Answer: 15 ft. west of track. See 200 feet.

"Question 4. Was the bell or gong on the electric car rung or sounded as the car approached the road crossing? Answer: Yes.

"Question 5. How fast was the electric car going (miles per hour) when the motorman saw that the driver of the automobile intended to try to cross the railroad track in front of the electric car? Answer: 20 miles.

"Question 6. What caution, if any, did the driver of the automobile exercise after the turn east was made and as he approached the railroad crossing to avoid a collision with the electric car? Answer: Slowed down.

"Question 7. What notice or warning, if any, did the motorman on the electric car have that the automobile was going to be turned at the corner

19—102 Kan.

and go east across the railroad before the automobile went around the corner and onto the railroad track in front of the electric car? Answer: Did n't have any.

"Question 8. What was the negligence, if any, that caused the plaintiff's injuries? Answer: Not properly equipped.

"Question 9. How far south was the railroad car from the road crossing and point of collision when the motorman saw and realized that the driver of the automobile was attempting to cross the railroad in front of the electric car? Answer: 40 ft.

"Question 10. What did the defendant fail to do that it should have done that caused plaintiff's injuries? Answer: Did n't have car properly equipped with air brakes and whistle."

1. The defendant argues that the special findings of the jury show that the verdict should have been for the defendant and that the plaintiff was not entitled to judgment, and further argues that the answers to questions numbered 1, 2, 3, and 4 of those requested by the plaintiff are conclusions of law. This argument is not good. The instructions of the court are not set out in the abstract. In the absence of the instructions, it is presumed that they properly covered the legal propositions embraced in each of these questions, and it is further presumed that the jury followed the instructions in answering these questions. Under proper instructions, these answers state facts and not conclusions of law.

2. Under the evidence and under the findings of the jury, John Burzio was guilty of such contributory negligence as would prevent him from recovering any damages sustained by him in the accident, for the reason that he attempted to cross a railroad track without stopping, looking, or listening, although there was a place of safety from which his view of the track was unobstructed and from which he could see the approaching car for a distance of two hundred feet. (*Jacobs v. Railway Co.*, 97 Kan. 247, 154 Pac. 1023; *Wehe v. Railway Co.*, 97 Kan. 794, 156 Pac. 742; *Bunton v. Railway Co.*, 100 Kan. 165, 163 Pac. 801; *Williams v. Railway Co.*, 100 Kan. 336, 164 Pac. 260; *Moler v. Railway Co.*, 101 Kan. 280, 166 Pac. 488.)

But, can the negligence of John Burzio be imputed to the plaintiff? The evidence does not show that the plaintiff exercised or attempted to exercise any control over his father while he was driving the automobile. A clear statement of the rule of law governing the recovery of damages under such cir-

Burzio v. Railway Co.

cumstances is found in *Corley v. Railway Co.*, 90 Kan. 70, 133 Pac. 555, as follows:

"The question presented is whether he is to be deemed chargeable with the negligence of the driver. The doctrine that one who voluntarily becomes a passenger in a conveyance thereby so far identifies himself with the driver that he cannot recover for an injury negligently inflicted by a third person, if the driver's negligence was a contributing cause, never gained much of a foothold in this country, and is now repudiated in England, where it originated. The history of its rise and decline is traced in a note in 8 L. R. A., n. s., 597, where cases are gathered illustrating all phases of the subject. Save in a few jurisdictions the negligence of a driver cannot be imputed to a passenger who in fact has no control over him. (Note, 9 A. & E. Ann. Cas. 408; Note, 19 A. & E. Ann. Cas. 1225; Note, Ann. Cas. 1913 B, 684; see, also, *Denton v. Railway Co.*, ante, p. 51.) This rule applies in the case of a guest who is riding with the driver for their mutual pleasure. (29 Cyc. 548-550; Note, 8 L. R. A., n. s., 648; 7 A. & E. Encycl. of L. 447, 448.) Where two persons are engaged in a common enterprise, using a conveyance for their purpose, each is said to be responsible for the acts of the other, but for this situation to arise each must have an equal right of control. (29 Cyc. 543; Note, 8 L. R. A., n. s., 628.) In the present case the jury found that the deceased was riding with the owner of the automobile as an invited guest on a pleasure trip. The defendant therefore cannot successfully invoke the doctrine of imputed negligence." (p. 73.)

In the Corley case an automobile was negligently driven onto a railroad track and was struck by a passing train. In that case the plaintiff's husband was a guest of the driver of the automobile and was killed in the accident. (See, also, *City of Leavenworth v. Hatch*, 57 Kan. 57, 45 Pac. 65; *Reading Township v. Telfer*, 57 Kan. 798, 48 Pac. 134; *Williams v. Withington*, 88 Kan. 809, 129 Pac. 1148; *Denton v. Railway Co.*, 90 Kan. 51, 133 Pac. 558; *Anthony v. Kiefner*, 96 Kan. 194, 198, 150 Pac. 524; *Denton v. Railway Co.*, 97 Kan. 498, 155 Pac. 812; *Angell v. Railway Co.*, 97 Kan. 688, 156 Pac. 763.)

The negligence of John Burzio cannot be imputed to the plaintiff.

3. The defendant contends that it was not negligent and that therefore it is not liable to the plaintiff for the damages sustained by him. This contention is good if the defendant was not negligent, but the contention is not good if the defendant was negligent. The petition charged that the defendant was negligent in permitting vegetation, hedge, weeds,

and underbrush to grow on its right of way so as to obstruct the view of the railroad track from any one traveling on the road running east and west. The jury found that the defendant was negligent in failing to keep its right of way free from weeds, grass, and underbrush. In *Corley v. Railway Co.,* 90 Kan. 70, 133 Pac. 555, this court said:

"Liability of a railway company for injuries occasioned by a collision at a highway crossing may be founded upon its negligence in allowing unnecessary obstructions to vision to exist upon the right of way." (Syl. ¶ 1.)

In the Corley case this court carefully examined the question now under discussion and reached the conclusion just stated.

4. It is urged that the findings of the jury were contradictory to each other and to the general verdict, and it is also urged that judgment should have been for the defendant. The special questions should be interpreted so as to support the general verdict rather than so as to overturn and destroy it. (*Solomon Rld. Co. v. Jones,* 34 Kan. 443, 8 Pac. 730; *U. P. Rly. Co. v. Fray,* 43 Kan. 750, 23 Pac. 1093; *Jackson v. Linnington,* 47 Kan. 396, 28 Pac. 173; *Kansas City v. Slangstrom,* 53 Kan. 431, 36 Pac. 706; *Railroad Co. v. Swarts,* 58 Kan. 235, 244, 48 Pac. 953; *MacElree v. Wolfersberger,* 59 Kan. 105, 52 Pac. 69; *Osburn v. Railway Co.,* 75 Kan. 746, 90 Pac. 289; *Lewellen v. Gas Co.,* 85 Kan. 117, 121, 116 Pac. 221; *McClain v. Railway Co.,* 89 Kan. 24, 28, 130 Pac. 646; *Orr v. Railway Co.,* 98 Kan. 120, 123, 157 Pac. 421; *Tarin v. Railway Co.,* 98 Kan. 605, 608. 158 Pac. 874.)

None of the special findings contradicts, but all are consistent with, the finding that the defendant was negligent in allowing weeds, grass, and brush to grow on its right of way. That finding supports the verdict.

The judgment is affirmed.