Bradshaw v. Payne.

No. 23,381.

JAMES W. BRADSHAW and ROSE BRADSHAW, *Appellees*, v. (JOHN BARTON PAYNE), JAMES C. DAVIS, Director-general of Railroads, as Agent, substituted, *Appellant*.

SYLLABUS BY THE COURT.

1. NEGLIGENCE—*Kicking Uncontrolled Freight Car Over Street Crossing—Collision with Automobile.* In an action by parents against a railroad company to recover for the death of a minor son who was riding as a guest of the driver of an automobile which was run into at a street crossing by a freight car, it is held that the evidence sustained a finding of negligence in kicking the freight car over a public street crossing uncontrolled and without a brakeman on top of the car to stop it with the hand brake if necessary.

2. SAME—*Deceased and Driver of Auto Not Engaged in a Common Enterprise.* The evidence considered and held sufficient to sustain a finding that the deceased, who was a minor about seventeen years of age, and the driver of the automobile, were not engaged in a common enterprise so as to render the former chargeable with the negligence of the latter;_the question being one of fact to be submitted to the jury.

3. SAME—*No Contributory Negligence of Guest of Driver of Automobile.* Assuming that the driver of the automobile failed to exercise due diligence to stop before attempting to cross the railroad track in order to discover whether there was a car or train approaching, the deceased being a mere guest of the driver was not, as a matter of law, negligent in failing to observe the approach of the car or failing to insist that the automobile be stopped in order to ascertain whether the car was approaching.

4. SAME—*Contributory Negligence—Age, Intelligence and Capacity of Deceased to be Considered.* In such a case it was not error for the court to instruct that in determining the question of contributory negligence the jury must take into consideration the age, intelligence, and capacity of the deceased, nor was it error to add this qualification to the statement in other instructions of the rule respecting contributory negligence.

5. SAME—*Ordinary Care Required in Kicking a Freight Car Upon the Track Without Engine Attached.* An instruction was given that in breaking up freight trains it is very common for switchmen to kick a car in upon a track without an engine attached, but that in doing so ordinary care and diligence require that at least one man ride the car and be in a position to, and give timely warning at a crossing, and in position to control the car by the use of a brake or otherwise. *Held,* the instruction was justified by the evidence and the circumstances concerning the surroundings of the crossing at the time of the collision.

6. SAME—*Measure of Damages—Verdict and Findings of Jury Not Excessive.* In an action by parents to recover for the death of a son about seventeen years of age there was evidence showing that the young man was of more

than ordinary development, mentally and physically, industrious, healthy; when not in school earned a man's wages on his father's farm; contributed his earnings to his parents when working for neighboring farmers; had frequently said he intended to remain with his parents until the farm was paid for. *Held,* that an allowance of $1,500 for his probable earnings from the time of his death until he was twenty-one years of age, and $5,000 as compensation for the loss of earnings which he would probably have contributed to the parents after his majority, is not excessive.

Appeal from Labette district court; ELMER C. CLARK, judge. Opinion filed June 10, 1922. Affirmed.

*W. W. Brown, O. T. Atherton,* and *E. L. Burton,* all of Parsons, for the appellant.

*W. D. Atkinson,* of Parsons, for the appellees.

The opinion of the court was delivered by

PORTER, J.: Claude B. Bradshaw, about seventeen years of age, was one of a party of boys who had been on a coon-hunting trip to the Neosho river east of Parsons, and who were returning to the. city between two and three o'clock in the morning, traveling in an automobile owned and operated by Frank Miller, when the car was struck at a street crossing by a shunted freight car of defendant's, resulting in the death of young Bradshaw. In this action the parents recovered a judgment for damages, and the defendant appeals.

The switch yards of defendant in the city of Parsons extend north and south for a distance of more than a mile, and cross Crawford avenue, which runs east and west; twenty-four tracks cross the avenue, and are in use day and night in the operation of engines and switch cars. The petition alleged that the automobile approached the street crossing from the east at a speed of about five miles an hour; that a large building immediately on the south and adjacent to the track obstructed the view from the east; that a freight car approaching from the south at fifteen miles an hour, collided with the automobile. It alleged that it was the duty of defendant to have moved the car at a lower rate of speed, coupled to and controlled by a switch engine, to have rung the bell of the engine, and to have had an employee on top of the car with a light to warn persons, and who could have controlled the car by the use of the hand brake. The negligence charged was kicking the car across the avenue uncontrolled by a switch engine or hand brake and without signal or warning, and failure to maintain a watchman.

Bradshaw v. Payne.

The answer, besides a general denial, alleged that Claude Bradshaw's own negligence in failing, on approaching the crossing, to look or listen or to make any effort to have the automobile stopped, in order to make proper observations, was the proximate cause of his death; that the driver was likewise negligent, and that deceased and the driver were engaged in a common enterprise, and that the driver was the agent of the deceased in operating the automobile. The reply was a verified general denial, alleging further, that Claude Bradshaw was a passenger, with no control over the automobile, and denying that the driver was his agent.

The jury returned a verdict in the sum of $6,500 in plaintiffs' favor, and special findings that the acts of negligence on which they based their verdict were: "a car uncontrolled; buildings, obstructed view." The obstruction of the view by buildings was not alleged as one of the acts of negligence relied upon. The jury also found that the automobile approached the point of collision at five, and the freight car at twelve miles per hour; that the automobile could have been stopped within ten feet. They also returned the following answers to special questions asked by the defendant:

"5. How far south of said crossing could the occupants of said automobile have seen a freight car approaching on the east house track, from the following point eastward along the traveled portion of Crawford avenue:

"From a point 20 feet eastward of the point of collision? ·Answer: 42 feet south of point of collision.

"6. How far south of said crossing could the occupants of said automobile have seen a freight car approaching on the east house track, from the following point eastward along the traveled portion of Crawford avenue?

"From a point 30 feet eastward of the point of collision? Answer: 32 feet south of point of collision.

"7. State what efforts, if any, deceased made to have the driver stop the automobile before going upon said crossing? Answer: None.

"8. If you find for the plaintiffs, state what amount you allow for loss of earnings prior to his reaching the age of 21 years? Answer: $1,500.

"9. What prevented the driver and the deceased from seeing the approaching freight car in time to have stopped, had they looked to a point 25 feet east of the point of collision? Answer: Swift's building; darkness and glare of arc light.

"10. Was the driver of said automobile, and said deceased, engaged in a mutual pleasure trip at the time of the collision? Answer: Yes."

To questions submitted by plaintiffs they answered that Claude Bradshaw was at the time of the accident a guest in the automobile, and also that he did nothing to direct its operation.

The track on which the box car moved was seventeen and a half feet west from the northwest corner of Swift's poultry warehouse, which was located east of the tracks, and was the last obstruction which prevented a view toward the south of the tracks upon which the freight car approached. The testimony of the other boys who were in the car shows that as they approached the crossing no one in the car saw or heard the freight car until the switchman shouted to them, when they all looked up and saw the approaching car and the switchman hanging on the side with a lantern in his hand. Their testimony was that they were looking to the north and south and listening for approaching cars. They were also looking ahead and expecting to see a flagman; none was there. Brakeman Crane, an employee of defendant, who was hanging on the lower step of the northeast corner of the approaching car with a lantern on his arm, called out to the occupants of the automobile and this was the first warning they had of the approach of the car. Willie Bradshaw, a brother of the deceased, said that when he saw the box car it was twenty-five or thirty feet from the sidewalk line and their automobile was eight or ten feet from the track; the automobile slowed down when the brakeman called; then the driver thought it was better to increase the speed and try to get across. The freight car hit the rear wheel of the automobile, shoved the car around and Claude was found lying on the track on the north side of the automobile. This witness testified that: "Before the switchman holloed, I hadn't heard any engine or hadn't seen any engine; nor had I seen any cars moving. I had not seen anybody in town. From the time we entered town there was no traffic on the streets; no traffic on the crossing."

Ernest Connelly, brother-in-law of the deceased, testified: "As we approached the crossing I looked north for engine or cars. I also looked for a flagman; Mr. Miller was looking south and said to me, 'One look each way as we come up to the crossing.' . . . As we approached, a switchman hanging on the northeast corner of the car that came out from behind Swift's building, with a lantern in his hand hollered. We was under the street light and it was like a man in a house looking out the window in the dark; the box car came up under the shade of the light; we didn't see the car till it was right on us cause the light prevented."

Otto Koch testified: "I saw no flagman; I looked north and south; didn't see or hear anything. When I discovered the box car we were

getting right on the track; . . . we couldn't hardly see the car; it was a kind of a gloomy night, foggy and damp, misting, moonshine and we couldn't hardly see the car at all. Frank started to stop the car when the brakeman hollered; he saw we were going to stop on the track and he then done his best trying to get across. . . . I stood up in the car and yelled out and Claude did too. All three of us did. . . . I don't know what else I did do, I was too scared."

Crane testified that he had thrown the switch and then crossed over to the east side and got on the car as it passed. "As we were going northward an automobile came from the east. There were no lights on it. I yelled when I was about half way up the ladder and I went on up to the top of the car. The automobile came right up to within twelve or fifteen feet from the track before it slowed down. Then the driver almost stopped, then he shot on across ahead of the freight car. When I halloed, I had my hand on the top stirrup on the north end of the freight car. . . . After I shouted to the people in the automobile I went up the ladder and got on the platform of the brake. . . . Got to the brake when I saw a collision was imminent and I got back on top of the car. . . . At the time of the accident I had been to the brake and left it. I took hold of the brake and wound up the chain. This was the only way to stop the car. I commenced to wind as soon as I got around to the end. . . . I had to get to the brake before I could wind it up."

On cross-examination he testified: "The brake was on the north end of this car. The car was running fast enough to reach the place it was intended to go without any added power. I was to control the car by the brake. . . . After the switch engine let go of it, it was wholly uncontrolled unless I controlled it by the brake. If I had been at the brake I could have controlled the car and stopped it in twenty-five feet. I saw the boys as soon as they came in sight. The car was then about twelve or fifteen feet back from the end of the Swift Packing Company's House. I gave the signal as soon as I saw them. If I had been on top of the car then I could have stopped it before it reached the center of the street. The car I was riding was a loaded car and made no noise. The automobile almost cleared the car. Just an instant more would have cleared it."

His testimony that he climbed to the top and reached the brake

before the collision is contradicted by Willie Bradshaw, who said, "He didn't go up the side of the car at all. He never started up." Frank Miller, on rebuttal, testified, "As we approached the crossing the brakeman who hollered out to us was hanging on the lower step." Otto Koch on rebuttal testified, "The brakeman hanging on the side of the car as we approached Crawford avenue crossing was on the lower or bottom step. He made only one step after I saw him."

French, a witness for defendant, who was engine foreman in charge of the crew, testified on cross-examination:

"When the car was kicked northward I intended for Mr. Crane, the field man, to take care of it. It was his duty to do so after it was cut off. The purpose of catching it and riding it was to control it. . . . He would not be able to control it until he was at the brake; then to control it he would have to have it tightened up where a turn of the wheel would apply the brakes. Crane was about twenty feet south of Crawford avenue when he caught the car. The car was then moving toward him. The purpose of Mr. Crane on that car was to stop it if it need be stopped for any purpose. That was his duty. It was the duty of Mr. Crane after he caught the car to go up the side of the car to the brake, so that he might have the car under control. The car would not be under control until he was at the brake and had the brake in a position to apply it."

The evidence shows that the street light at the corner of Swift's building was lighted every night and that it hung about twenty-five feet above the street. Claude Bradshaw was familiar with the crossing; his sister lived near the railroad tracks on Crawford avenue for a time and he had frequently visited her there.

The defendant, in support of the contention that the deceased was negligent, cites cases where it has been held that an automobile driver must stop and go to a point where he can see, if there is no other way to determine whether a train is approaching on a track which he is about to cross. It is insisted that the testimony of the boys who were in the automobile showed that either because of the condition of the atmosphere or the existence of the street light and because of the buildings near the right of way, they were unable to observe for any distance on either side of the crossing, and therefore it was negligence as a matter of law for them to attempt to drive over the crossing without stopping and investigating whether a car was coming.

Bradshaw v. Payne.

The defendant also lays stress on the evidence showing that at this time in the night there was practically no traffic on this public street, and insists that, conceding it would have been negligence to have kicked the car across the street in the daytime in a thickly populated part of the city, it was not negligence to do so at the time and under the circumstances. We think it was negligent to have the car kicked over the public crossing at any hour of the. night because it was a public street upon which travelers were liable to appear at any moment, although the probability that there would be travel over the crossing at that hour of the night was very slight. The evidence shows that the car might as well have been kicked over the crossing without any attempt to control it, or with no brakeman near it.

The only conflict in the testimony as to Crane's movements was over the question whether he went to the top of the car at all; the overwhelming testimony is that he did not, and that his neglect of this duty was one of the causes of the collision. The jury was warranted upon the testimony of the foreman, French, and of Crane himself, in finding that the car was kicked over this public crossing uncontrolled, and that this negligence was the proximate cause of the collision. On the facts stated and under all the circumstances, it cannot be said as a matter of law that the deceased was guilty of contributory negligence in failing to observe the approach of the car, or failing to insist that the automobile be stopped in order to ascertain whether a car was approaching.

The evidence shows that Claude Bradshaw was not present when the coon-hunting expedition was arranged but was invited to go along. The findings of the jury are that he was a guest of the driver, and that he did not direct in any way the operations of the car, so that even though the driver may have been negligent the deceased was not. (*Williams v. Withington,* 88 Kan. 809, 129 Pac. 1148; *Denton v. Railway Co.,* 90 Kan. 51, 133 Pac. 558; *Corley v. Railway Co.,* 90 Kan. 70, 133 Pac. 555; *Denton v. Railway Co.,* 97 Kan. 498, 155 Pac. 812; *Kessler v. Davis,* post, p. 515.)

The deceased was a minor slightly under 17 years of age. In *Angell v. Railway Co.,* 97 Kan. 688, 156 Pac. 763, it was held that it cannot be said as a matter of law that a 19-year-old girl riding in the rear seat of an automobile, driven by her brother-in-law, is bound to advise him in reference to the management of the car at the approach to a railroad crossing.

There is a contention that instructions stressed too highly the fact that Claude Bradshaw was under age. In each instruction which referred to the general rule that a person must use ordinary care and diligence to avoid injury to himself, there was attached the qualification in substance, that if the jury believed from the evidence that the deceased "was a youth of immature judgment and understanding and inexperience in the perils of undertaking to cross the tracks under the circumstances surrounding him at the time, and that by reason of such immature judgment, lack of understanding and inexperience, he was incapable of understanding the nature and extent of the hazard and peril to which he was being subjected," the rule would not apply; in substance, that in order to prevent a recovery because of contributory negligence of the deceased, "the jury must find and believe from the evidence that the deceased failed to exercise that degree of care and diligence that persons of his age, undeveloped judgment and inexperience would ordinarily use under the same or similar circumstances." It is insisted that the court laid too much stress upon the minority of the deceased; especially in view of the testimony offered by plaintiffs to show that he was a young man of more than ordinary development, mentally and physically. The evidence showed he had attended the county high school; had taken a year of an extended course in vocational agriculture; was very industrious, intelligent, healthy and well developed; that he weighed 150 to 160 pounds, and was able to do a man's work on the farm and to earn a man's wages at farm work; that he possessed the capacity of a man for earning money and doing work and knew the location of the crossing and the obstructions thereto and was familiar with the situation and conditions surrounding the place. It is argued that if the jury followed the instructions they could not escape the conclusion that the fact of the minority of the deceased was one of extreme importance for their consideration in determining the duty he owed to care for his own safety. It was not error for the court to instruct that in determining the question of contributory negligence the jury must take into consideration the age, intelligence and capacity of the deceased. Was it error to add this qualification to each statement of the rule respecting contributory negligence? We think not. The instructions in this respect taken as a whole made incapacity and intelligence the test and not necessarily the age of the deceased.

Bradshaw v. Payne.

Complaint is made of an instruction that in breaking up freight trains it is very common for switchmen to kick a car in on a track without an engine attached, but that in doing so ordinary care and diligence require that at least one man ride the car and be in a position to, and give timely warning at the crossing, and in a position to control the kicked car at all times by the use of a brake or otherwise. This, it is insisted, amounted to an instruction that the failure to take such precautions was negligence *per se*. The instruction was justified in view of the evidence showing the surroundings of the crossing, the obstructions to the view of persons approaching from the east, and the uncontradicted testimony of the engine foreman, in charge of the car; in substance, that it was the duty of Crane, the field man, to ride the car in and to be in a position to control it by the hand brake if it needed to be stopped for any purpose. On the conceded facts the jury could well say that it was negligence for the defendant to permit the car to be shunted across the public street in the nighttime at grade, without any warning, and with the car uncontrolled.

It is contended that the answers of the jury establish the contributory negligence of Claude Bradshaw, because of the distance the findings show an approaching freight car could have been seen. If this were a case in which Miller, the driver, were seeking recovery the point might be well taken; but since Bradshaw was merely an invited guest of the driver, the latter's negligence cannot be imputed to the deceased. The findings of fact do not establish as a matter of law contributory negligence and the general verdict determines that issue in favor of the plaintiffs. We find no error in overruling the motion for a new trial.

There is a contention that the verdict is excessive. The jury allowed $1,500 as the probable earnings of the deceased from the time of his death until he was 21 years of age, a period of substantially 4 years, and $5,000 as compensation for the loss of earnings which he would probably have contributed to the parents after his majority. The life expectancy of the father was shown to be 21 years; that of the mother about the same. The evidence upon the question of damages offered by the plaintiff showed that the young man, in addition to the capacity and intelligence already referred to, had contributed to plaintiffs his earnings when working for neighboring farmers; that he had frequently stated that he intended to be a farmer and to remain with his parents until

the farm was paid for, and that he intended always to stay with his parents. His conduct, declarations and disposition toward his parents, his capacity, age and intelligence, furnish some basis for a reasonable expectation that he would continue to confer benefits upon them. (*Railway Co. v. Fajardo,* 74 Kan. 314, 86 Pac. 301; *Brick Co. v. Fisher,* 79 Kan. 576, 100 Pac. 507.) The jury could only speculate from this evidence what would be a reasonable sum to allow for damages. The majority of the court are of the opinion that the amount of the judgment cannot be regarded as excessive in this case.

It follows that the judgment is affirmed.

PORTER, J. (dissenting in part): In my opinion the $1,500 allowed as the prospective earnings of the son, over and above the cost of his maintenance, education and keeping for the four years until he would have arrived at majority, is an excessive amount according to general experience. I also think that the $5,000 allowed in addition is an excessive amount and that the judgment should be reduced to $3,500.